THE PEOPLE v. ANDREW J. KRIDLER.

*Liquor traffic—Keeping saloon open on Sunday—Evidence.*

The admission of a respondent on trial for failing to keep his
    saloon closed on Sunday, that he was the keeper of a liquor
    saloon located in a front room on the first floor of a desig-
    nated building, is not *prima facie* evidence that he was the
    keeper of a like saloon located in a rear room in the second

story of the same building, and only connected with the other saloon by an outside stairway from an alley at the side of the building.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued May 1, 1890. Decided May 9, 1890.

Respondent was convicted of keeping his saloon open on Sunday. Conviction reversed. The facts are stated in the opinion.

*Eggleston & McBride,* for respondent.

*B. W. Huston,* Attorney General, and *W. J. Stuart,* Prosecuting Attorney *(Stuart, Knappen & Weaver,* of counsel), for the people.

LONG, J. Respondent was arrested, tried, and convicted in the superior court of Grand Rapids upon the charge of having kept his saloon at No. 66 North Waterloo street, in said city, open on October 6, 1889, which was Sunday

On the trial before a jury it was admitted that defendant was the keeper of a saloon at No. 66 North Waterloo street, in said city, in a room on the first floor of the building at that number, and was not a druggist who sold liquor for medicinal, mechanical, chemical, scientific, and sacramental purposes only, and that he paid the State tax, and had a government and city license, for engaging in such business at North Waterloo street, and engaged therein from May 1, 1889, to the time of the offense charged.

The prosecution called two witnesses. Mr. T. W. McKay testified as follows:

"I reside at No. 157 First street. Am an interior decorator. Have known defendant a short time. Know the saloon at 66 North Waterloo street, in this city, and

have been there. There is another saloon next door, south of this, at the corner of Waterloo and Louis streets. The two buildings are connected in front. I have seen defendant in the saloon at No. 66 North Waterloo street.

"On the evening of October 6 last my brother and I were going to the opera-house, and, as it was early, we took a walk on the streets, and at ten minutes to 8 we turned into the alley in rear of these two saloons, and went to the rear of number 66, and went up an outside back stairs, into a room over the rear part of that number. It was not over the saloon, but over rooms in the rear of the saloon. It was on Sunday. In that room we found a sort of a bar made out of matched stuff. There were some tables in the room, and saw six or seven persons seated about these tables. The defendant was sitting at one table. A man named Walter Hart was tending bar, and we called for two whiskies, and Hart gave us something that tasted like whisky. We paid ten cents a drink for it. We staid long enough to get the drinks, and then went out. I think the bar-tender was Walter Hart. I called him Kennedy, but I think his name was Hart. Heard some one call him Kennedy. Had an introduction to him a month before that. I have seen him tend bar in the saloon below several times. Saw him tend bar there on October 7, and before that time. I can't say who keeps the place we went into Sunday. Don't know whether it belongs to Hart or not, or whether defendant has any interest in it."

Mr. Charles McKay testified:

"I live in the city, and have known the defendant for a short time. I have seen him at the saloon at 66 North Waterloo street, but I can't say that his sign is posted up in front of the saloon, or that his name is there. I knew the bar-tender that was up-stairs about two years. His name is Walter Hart. I saw him tending bar at the saloon down-stairs before that, but can't say how long. I presume since the middle of last summer. Have seen him tending bar there several times.

"I remember going with my brother, the last witness, on October 6 last, between 7:30 and 8 P. M., into a room on the second floor of the building at 66 North Waterloo street. It was on Sunday. We went into the alley in the rear of the saloon, and up the back stairs, which was an

outside stairs, and into a back room, which is over rooms in the rear of the saloon. We got a drink in there from Hart. Saw defendant and five or six others in that room sitting at tables, but had no conversation with him. We got whisky from Hart, and paid him 20 cents for it. I don't know where he got the whisky from."

On cross-examination, the witness said:

"I don't know who either men were sitting at the tables. I don't know who the business up-stairs belongs to. I can't say that the defendant has any interest in it. Hart didn't go down stairs to get the liquor. I saw no place to go down stairs into the saloon; no entrance to that room up-stairs, except from the outside stairway."

This is all the evidence offered on the part of the prosecution.' The defense offered no proofs.

There are several errors assigned, all relating to the charge of the court. It is contended that the admission of the defendant that he is the keeper of a saloon at No. 66 North Waterloo street, in a room on the first floor of the building at that number, assumes that his business is confined in a room on the first floor of that number; and in order to convict him of keeping a saloon or bar open in a room in the same building, but up-stairs, and in no wise connected with his saloon, it is just as necessary to prove that he kept it, or had some interest therein, as it would be to show that he was the keeper of any saloon, if no admissions were made. It is further contended that the jury could not find from the evidence that defendant had anything to do with the saloon up-stairs. The court charged the jury as follows:

"Now, the whole turning-point seems to be, in this case, whether the people have proven that the room up-stairs that the witnesses McKay swear they were in was the room of the respondent. The license of Mr. Kridler to keep a saloon at number 66 covers the entire number 66, and if, without any other showing, the people show that Kridler kept the saloon open on Sunday, or the bar open on Sunday, and sold liquor in any room at number

66, and you are convinced of that fact beyond a reasonable doubt, then Kridler is guilty of keeping the saloon open on Sunday; and if he kept any room at number 66 open, whether up-stairs or down, a *prima facie* case is made by the people; and, in order to overthrow that *prima facie* case, there must be a showing that would stagger your determination or your reasonable doubt, by showing by some evidence that some one else occupied the room at 66 instead of Mr. Kridler, up-stairs, or in that room where this liquor was sold.

"Now, if the people have proven, and it is admitted, that Mr. Kridler is licensed and keeps a saloon at number 66, and the proof is that he keeps a saloon at number 66 now, there is no misunderstanding, I presume, that, in the absence of any other showing, if Mr. Kridler or his bar-tender were selling liquor at number 66, up-stairs or down-stairs, on Sunday, the presumption is that he, Kridler, kept the saloon, in absence of any testimony to the contrary. If you find that the respondent, Kridler, kept the saloon at 66, and that he occupied rooms above the saloon, and in connection with the saloon, and further find that at 66, up-stairs, the respondent, Kridler, kept liquors for sale on Sunday, October 6, either by means of himself, his agent, or bar-tender, and on Sunday, October 6, at such rooms, up-stairs, he kept, and by his bar-tender sold, on Sunday, to the McKay brothers, as testified by them, then, in that case, he would be guilty of the offense charged."

It is contended that the following portion of the charge is erroneous:

"And if he kept any room at number 66 open, whether up-stairs or down, a *prima facie* case is made by the people; and, in order to overthrow that *prima facie* case, there must be a showing that would stagger your determination or your reasonable doubt, by showing by some evidence that some one else occupied the room at 66 instead of Mr. Kridler, up-stairs, or in that room where the liquor was sold;"—

·*a*—Because it assumes that there is some evidence that respondent kept the room up-stairs open.

*b*—Because the jury were thereby instructed that, even if there was no evidence that respondent had any interest in the room up-stairs, the showing that it is over his

saloon is *prima facie* evidence that he kept it, unless he makes an affirmative showing that some one else, and not he, occupied and controlled the room up-stairs.

It must be held—

1. That there was some evidence to go to the jury from which they would have been warranted in finding a verdict of guilty. -

2. That the court was in error in that portion of the charge above quoted.

The information charged him with having kept open on Sunday, October 6, 1889, a saloon at No. 66 North Waterloo street, in the city of Grand Rapids. The fact that he had a license for keeping and did keep a saloon on the first floor, in a front room of a building numbered 66 on North Waterloo street, is not *prima facie* evidence that he kept a saloon in a rear room in the same building, up-stairs, in no manner connected with the saloon on the first floor front, except by an outside stairway from the alley, at the side of the building. It may also be said that the rule laid down by the court put the burden upon the defendant of showing that these rooms were not connected with his saloon, and not kept by him. The people must make their case, and prove every essential element of the offense, beyond a reasonable doubt.

It is claimed by the people that the facts shown bring the case within the ruling of this Court in *People v. Cox,* 70 Mich. 247, and *People v. Beller,* 73 Id. 640. In *People v. Cox* it appeared that the defendant occupied the whole · of the rooms, and, while not keeping the saloon proper open on Sunday, he did sell and furnish beer from the rooms he occupied as living rooms, and it was held that he must be considered as having made these living rooms a part of his saloon. They were, however, connected with the saloon by inward doors. *People v. Beller* was also a very different case. There the sales were from a beer

garden, connected directly with the bar, and the jury found that the bar was kept open.

The verdict and judgment must be set aside, and a new trial ordered.

The other Justices concurred.