# JANUARY TERM, 1898.*

## PEOPLE *v.* SCHOTTEY.

INTOXICATING LIQUORS—SUNDAY CLOSING.

    A saloon is open, within the contemplation of 3 How. Stat. § 2283e, requiring saloons to be kept closed during Sunday, where a door leading from the saloon into a hallway is left open, and people are allowed to enter the hallway, which does not connect with any room other than the saloon.

| 116 | 1 |
| 120 | 487 |
| 116 | 1 |
| 128 | 214 |
| 116 | 1 |
| 148 | 306 |
| 116 | .1 |
| 153 | 613 |
| 116 | 1 |
| 156 | 238 |
| 116 | 1 |
| 158 | 39 |

Exceptions before judgment from superior court of Grand Rapids; Burlingame, J. Submitted January 28, 1898. Decided February 16, 1898.

John Schottey was convicted of violating the liquor law. Conviction affirmed.

*Dunham & Thornton*, for appellant.

*Fred A. Maynard*, Attorney General, and *Frank A. Rodgers*, Prosecuting Attorney (*Rodgers, McDonald & Corwin*, of counsel), for the people.

LONG, J. The respondent was convicted on a jury trial in the superior court of Grand Rapids upon the charge of having kept his saloon open on Sunday, the 1st day of August, 1897. The cause comes into this court upon exceptions before sentence. The assignments of error are all based upon portions of the charge of the court.

It appears that the saloon of the respondent is a building about 25 by 40 feet. In the front part is the saloon. Back of this are the living rooms. There is a front door to the saloon, opening out upon the street, and at the rear is a door opening into the living rooms. On the north side of the saloon is a hallway about 5 feet wide by 16 feet

---

* Continued from Vol. 115.

long, with a front door to the street and a side door opening into the saloon. There is no way of getting from this hallway into the living rooms except through the saloon. The people introduced as a witness Mr. Hale, a police officer of the city, who testified that on the morning in question he saw the respondent, with three others, go into this hallway, the side entrance to the saloon; he followed, stepped into the hallway, and saw the three men there, with the door of the saloon wide open, and the respondent's bartender near the bar; that the respondent said he was not there for any business, but that the men were there to inquire about some men from Jackson. The respondent testified that the men came into the hallway, but did not go into the saloon; that one asked for tobacco, and he stepped into the saloon, got it, and gave it to him. He further testified that the bartender passed through the saloon that day, though the bartender himself denied that he was there on the occasion testified to by Mr. Hale.

In view of the testimony of the respondent, it is unnecessary to discuss the questions raised upon the charge. Upon that testimony it appears that the saloon was not closed, within the meaning of section 2283e, 3 How. Stat.; and the court might very properly have directed a verdict of guilty. *People* v. *Richmond,* 59 Mich. 570; *People* v. *Kirsch,* 67 Mich. 539; *People* v. *Lyng,* 74 Mich. 579; *People* v. *Ackerman,* 80 Mich. 592; *People* v. *Neumann,* 85 Mich. 98; *People* v. *Repke,* 103 Mich. 459; *People* v. *Hawkins,* 106 Mich. 479. In the last case it was said:

"It is settled by former adjudications that it is the duty of the jury to take the law from the court, and that, where there is no conflict in the evidence, and the defendant in open court admits facts legally constituting an offense, the court may so state, and even go so far as to direct a verdict. In this case the defendant had practically sworn to his own guilt."

So in the present case the respondent admitted that the saloon was open on the occasion when these men were in

the hallway, and that the bartender passed through the saloon on that day.

But it is contended by the learned counsel for the respondent that the facts shown do not warrant the conclusion that the saloon was open for the purpose of doing business, and that the respondent and his family had the right to go into the saloon, or pass through it; and also that the bartender was a member of respondent's family. The situation of the rooms in this building is very peculiar.   This hallway has no opening, aside from the outside entrance, except into the saloon.   In order to go into the living rooms in the rear it is necessary to pass through the saloon, and in passing from the living rooms to the front of the building it is necessary to go into the saloon.   Both this side entrance from the hallway and the door to the living rooms were open on that day.   The statute means that saloons shall be kept closed the first day of the week, and compliance with it means that all the doors and openings shall be kept closed, whether in the front or rear.   It is apparent that this hallway was made the runway from the street into the living rooms by passing through the saloon.   It was immaterial whether any liquors were sold there that day or not.   As was said by Mr. Justice MORSE in *People* v. *Cummerford*, 58 Mich. 331:

"When the statute requires the doors to be closed, it means that no one shall be inside, or get inside thereafter, before lawful hours, at least with the consent of the defendant or his authorized agents.   We had supposed the meaning of the term 'closed door,' under the statute, had been fully heretofore set forth by this court in the cases of *Kurtz* v. *People*, 33 Mich. 282, *People* v. *Waldvogel*, 49 Mich. 337, *People* v. *Blake*, 52 Mich. 566, and others. It is not alone the intent or purpose for which the saloon is kept open that is offensive to the law, but also the opportunity furnished persons to obtain liquors at the hours and on the days prohibited by the statute."

The object of the statute was to cut off all subterfuges or excuses for the violation of the statutory inhibition, and

the keepers of such places must keep them closed at their peril. *People* v. *Higgins*, 56 Mich. 159. There was a front door to this saloon, opening from the street. To go into the saloon, the hallway was not necessary. The hall-way did not lead into the living rooms, but into the saloon. It was into this hallway the young men were taken on the morning in question. Confessedly, that door was open, and the door from it into the saloon was open. This was a plain violation of the act.

The conviction must be affirmed, and the court below directed to proceed to judgment.

The other Justices concurred.