PEOPLE *v.* WARREN.

1. Criminal Law — Trial by Jury — Province of Court — Directing Verdict.

Where the jury in a criminal case showed themselves unwilling to render a verdict in accordance with an instruction that it was their duty, under the evidence, to find the respondent guilty, it was reversible error for the court to state to them that there was nothing for them to do but to comply with the direction of the court, and that they violated their oaths as jurors when they set up their individual opinions against the court's instructions.

2. Same—Embezzlement by Public Officer—Intent.

Under 3 How. Stat. § 9263a, making it a felony for any public officer knowingly and unlawfully to appropriate to his own use, or to the use of any other person, money received by him

in his official capacity, and section 9263c, providing that the failure of any such officer to pay over to his successor all moneys which should be in his hands as such officer shall be *prima facie* evidence of the offense, it is not necessary, to constitute the offense, that the unlawful appropriation should be with an intent to forever exclude the rightful owner from use and possession.

3. SAME—EVIDENCE—ADMISSIONS—CROSS-EXAMINATION.
　Where, upon the trial of a public officer for the embezzlement of public funds, one of respondent's bondsmen, as a witness for the people, had testified to admissions made to him by respondent, and to payments made by the bondsmen, respondent should have been allowed to show, on cross-examination of the witness, the entire conversation with him, and the entire transaction about the payments.

Exceptions before judgment from superior court of Grand Rapids; Newnham, J. Submitted October 26, 1899. Decided December 30, 1899.

Frank D. Warren was convicted of embezzlement　Reversed.

*M. L. Dunham, H. M. Dunham, J. Kirwin,* and *H. J. Felker,* for appellant.

*Horace M. Oren,* Attorney General, and *Frank A. Rodgers,* Prosecuting Attorney (*Rodgers, McDonald & Minor,* of counsel), for the people.

MOORE, J. The respondent was city clerk of Grand Rapids. He was charged with appropriating to his own use money belonging to the city. The case was tried before a jury. The trial judge charged the jury at length. Near the close of the charge he instructed the jury that it was their duty to return a verdict of guilty. The jury retired with an officer, and, after being out for three hours, they were brought into court, and the following occurred:

"*The Court:* Mr. Clerk, you may ask the jury if they have arrived at a verdict.

"*The Clerk:* Gentlemen of the jury, have you arrived

at your verdict? If so, let your foreman arise and answer.

"*The Foreman* (Mr. Goodell): We have not. You ask if we had come to a verdict?

"*The Clerk:* Yes; have you arrived at a verdict?

"*The Foreman:* We have not; no, sir.

"*The Court:* Gentlemen of the jury: You have been out now somewhere about the space of three hours. The court very plainly gave you his instructions, and told you what it was your duty to do. The court instructed you that it was your duty to render a verdict of guilty in this case. There was nothing else for you to do; there is nothing else for you to do; and any individual juror or jurors who sets himself up against the plain instruction of the court is violating the oath which he took when he was sworn upon the case. The responsibility, gentlemen, of finding this verdict, is not yours; you simply have to do as the court directs you to do; and, as I said, no individual juror or jurors must set up his own opinion against the instructions given you by the court, that, under the law and the undisputed facts in this case, it is your duty to render a verdict of guilty in this case."

The jury again retired, and, after being out 20 minutes, returned into court, when the following took place:

"*The Court:* Mr. Clerk, you may take the verdict.

"*The Clerk:* Gentlemen of the jury, have you agreed upon your verdict? If so, let your foreman arise and answer.

"*The Foreman:* We have.

"*The Clerk:* What say you, Mr. Foreman? Do you find the respondent guilty or not guilty?

"*The Foreman:* We find the respondent guilty, according to his honor's instructions.

"*Mr. Dunham:* I would like to have the jury polled."

The jury was polled. Four of the jurors replied in substance that, because of the instruction of the judge, they voted guilty. Afterwards a motion was made for a new trial, and an affidavit signed by 11 of the jurors was filed, stating in substance that each of them would have voted "Not guilty," had they not believed that in so doing they would have been guilty of contempt of court, and possibly subject to fine and imprisonment.

Leaving out the question of whether this affidavit can be considered or not, it is very clear that up to the last moment the jury did not acquiesce in the direction of the court to find a verdict, and that four of them, at least, were unwilling to acquiesce in said verdict. The practical effect of what was done was that not only did the trial judge direct the jury as to their duty, but, when the jury failed to follow his direction, he did for them what he claimed it was their duty to do. Many questions are involved in the case, but the important question is, Can a trial court compel a verdict of guilty in a felony case, when some of the jurors are not willing to render such a verdict? The claim of counsel for the people is stated as follows: "The trial judge has power to direct a verdict of guilty in a criminal case where the facts are admitted or undisputed, and the intent is a legal inference from the undisputed facts, or in cases where the statute does not make intent an element of the offense, but commands an act to be done or omitted which, in the absence of the statute, might have been done or omitted without any culpability, and where consequently the bare commission or omission of the act in question in itself constituted the offense, irrespective of any felonious intent on the part of the defendant. * * * We contend that directing a verdict in a civil case or a criminal case comes to the court by virtue of its being the sole judge of the law; that, where the facts are undisputed, there is nothing for the jury to pass upon, and it logically follows that if the court is the judge of the law, and the facts are undisputed, it is then a question for the court to answer which party should recover in a civil case, and what the verdict should be in a criminal case;" citing *Montee* v. *Com.*, 3 J. J. Marsh. 132; *Duffy* v. *People*, 26 N. Y. 588; *Sparf* v. *U. S.*, 156 U. S. 51; *State* v. *Burpee*, 65 Vt. 1 (19 L. R. A. 145, 36 Am. St. Rep. 775); *Hamilton* v. *People*, 29 Mich. 173; *People* v. *Mortimer*, 48 Mich. 37; *People* v. *Richmond*, 59 Mich. 570; *People* v. *Kirsch*, 67 Mich. 539; *People* v. *Neumann*, 85 Mich. 98; *People* v. *Repke*, 103 Mich. 459; *People* v. *Hawkins*, 106 Mich. 479; and other cases.

It, of course, is well settled that in civil cases, where the facts are undisputed and the case turns upon a question of law, the court can direct a verdict, and he can have the clerk take the verdict without having the jury retire for consultation. It is not true, however, that this has ever been allowed in a criminal case in this State. Our attention has been called to a good many cases where the court has directed a verdict in a criminal case, but it has not been called to any case where the jury failed to follow the instructions of the judge, and the judge himself pronounced the verdict. In a civil case the court may set aside a verdict, whether it be for the plaintiff or defendant. It may do the same thing in a criminal case in case of a conviction, but it cannot do so in case of an acquittal. It would be a useless form to take the verdict of a jury in a civil case involving only questions of law, where the verdict, whether for the plaintiff or defendant, might be set aside by the judge because contrary to the law; but the judge could not set aside a verdict of acquittal if rendered by a jury in a criminal case. Can he, by compelling a verdict of guilty, do indirectly what he could not do directly?

The right of trial by jury was denied to persons accused of crime in the early history of the race. It was not until after a long and persistent struggle that the right was secured. This right was deemed so essential that in the Constitution of the United States, by the sixth amendment, "the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed" is guaranteed. It has been held that this is a right which cannot be waived, and that a trial by the judge, even by the consent of the prisoner, is erroneous. *State* v. *Maine*, 27 Conn. 281. Article 6, § 28, of the Constitution of this State, also guarantees to the accused the right to a speedy and public trial by jury. This is a right which cannot be waived except by a plea of guilty. *Hill* v. *People*, 16 Mich. 351; *People* v. *Luby*, 56 Mich. 551; *People* v. *Murray*, 89 Mich. 284 (14 L. R.

A. 809, 28 Am. St. Rep. 294). In *People* v. *Marion*, 29 Mich. 31, it is said:

"It is one of the most essential features of the right of trial by jury at common law that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit."

This case is cited with approval in *People* v. *Harding*, 53 Mich. 56 (51 Am. Rep. 95).

I think it clear that a general verdict involves, not only a decision of the facts in the case, but an application of the law to the facts. In *Hamilton* v. *People*, 29 Mich. 189, this language is used:

"The circuit court was asked, but refused, to give the following instruction:

"'This is a criminal trial on an information for felony, and all the questions of law and fact in the case are exclusively for the jury, and the jury are paramount judges, both of the law and the facts.'

"The court held they were judges of law and fact under some restrictions and conditions, but not in the absolute way indicated.

"The precise definition of the rights of a jury in criminal cases is easier understood than expressed. Their decision upon the guilt or innocence of a prisoner can never be directly reviewed, and upon an acquittal there can be no new trial. But, if they have the legal authority claimed in the request, their verdict of guilty would be of the same force as their acquittal. In this country, for a long time past, exceptions have been usually allowed to the rulings of the court on the trial, and, if those rulings are erroneous, the conviction will be set aside. But this can only be upon the idea that the jury are expected to follow the charges given; and it is as contrary to the law, as usually administered, to refuse to give a proper charge, as to give an improper one. And if a judge were to decline to give any charge,—as he might, if it is of no importance,—it has been assumed that he would violate his duty.

"The law does not favor unnecessary intrusions by one functionary upon ground of others. But the charge of a

judge in criminal cases is one of the ancient and traditionary incidents of a trial, which must have been introduced for some purpose, and must have some value. It is certain that there is a great body of authority holding it to be meant for the guidance and instruction of the jury, and entitled to their respect. It is true that juries in criminal cases cannot properly find a conviction against their consciences. It is also true that they cannot be questioned or held responsible upon their verdict, nor called on to explain its reasons. Whether those reasons are based on a doubt or disbelief of evidence, or on a rejection of the exposition of law given by the court, they are equally beyond review. At common law a conviction was as final as an acquittal, and could only be relieved by a pardon. And it is very well understood that this immunity from censure or review is necessary to liberty. A jury cannot be compelled, in dealing with crimes, to separate the facts from the law. The right to give a general verdict is essential to the integrity of the system, and all attempts to deprive juries in criminal cases of that power have been opposed as destructive of the system. And experience has shown that special verdicts in such cases have not been favorable to justice. We need not hesitate to determine that it is within the *power* of juries to act upon their own view of the law. But it does not follow from this that the law does not assume that they will respect the instructions of the court.

"The power of juries in criminal and civil cases is the same in kind, though different in degree. The practice of disregarding or relieving against wrong verdicts in civil cases is one largely of modern growth. In early times verdicts were substantially conclusive. In modern times, though they may be set aside, they cannot be reviewed or altered. And setting aside verdicts as against law is a matter of discretion, and not of right. An appellate court can only review the action of the judge, not that of the jury. And this, too, is not by virtue of the old law, but by force of statutes, which, though ancient, are yet later in origin than jury trials. The jury system is generally regarded as deriving one of its chief advantages from having the law applied to the facts by persons having no permanent offices as magistrates, and who are not likely to get into the habit of disregarding any circumstances of fact, or of forcing cases into rigid forms and arbitrary classes. It is especially important, where guilt-

depends on a wrong intent, to give full weight to every circumstance that can possibly affect it; and professional persons are under a constant temptation to make the law symmetrical by disregarding small things. But it is necessary, for public and private safety, that the law shall be known and certain, and shall not depend on each jury that tries a cause. And the interpretation of the law can have no permanency or uniformity, and cannot become generally known, except through the action of courts.

"It may be fairly regarded as one of the best features of the jury system that the law, though interpreted by professional interpreters, can only be applied to facts through the understanding of ordinary men of average capacity, and usually including in their number some of very simple minds. By this process it is divested of all that would not be readily comprehended by all men. In this way overnicety and technicality become less dangerous, if not absolutely harmless; and an apparent deviation in the verdict from the rules laid down is often no departure from the rules as supposed to be laid down.

"But, if the court is to have no voice in laying down these rules, it is obvious that there can be no security whatever, either that the innocent may not be condemned, or that society will have any defense against the guilty. A jury may disregard a statute just as freely as any other rule. A fair trial in time of excitement would be almost impossible. All the mischief of *ex post facto* laws would be done by tribunals and authorities wholly irresponsible, and there would be no method of enforcing with effect many of our most important constitutional and legal safeguards against injustice. Parties charged with crime need the protection of the law against unjust convictions quite as often as the public needs it against groundless acquittals. Neither can be safe without having the rules of law defined and preserved, and beyond the mere discretion of any one. We must construe the jury system, like all other parts of our legal fabric, in the light of history and usage. It came into this country as a part of our common law, and it has been fixed by our constitutions as a known and regular common-law institution. Like many of our best heritages from that source, we know what it is better than how it was devised, or (which is more probable) came into use without devising. We must look to the use as evidence of the law. And, look-

ing to that, we find that the judge has always assumed to give the jury instructions upon the law. We find, further, that, while there have been severe complaints and stern measures to secure them from his control on the facts, there has never been any attempt to abolish the practice of charging on the law. All the improvements in mitigation of the old system have gone upon the ground that the jury were expected to follow the instructions of the court. The introduction of reserved cases and criminal exceptions would be little short of an absurdity on any other theory. If there were any grounds of complaint, it would not be for wrong instructions, but for giving any charge at all. There is much difficulty in dealing with arguments which assume to qualify a system, and yet are not consistent with its uniform history. A jury system without a presiding judge who is something more than a puppet is not the jury system which we have inherited.

"It would not be profitable to collate or discuss the authorities at length. They differ in terms more than in substantial results. If the charge is proper, it can only be so because it is to be respected. If juries disregard it, they may be free from personal risk, and in cases of acquittal their verdict is conclusive. But the power to do wrong with impunity does not make wrong right. The same thing cannot be lawful and unlawful when done by different persons.

"We understand the uniform practice, and the decided weight of opinion, to require that the judge give his views of the law to the jury as authority, and not as a matter to be submitted to their review. And, while we recognize the power of the jury to give wrong verdicts, or to disregard the law, we are nevertheless warranted by usage and authority in holding that such conduct would be an abuse of their discretion, which could only be palliated by such tyrannical and perverse instructions as their good sense should teach them could not possibly be true or just."

In the discussion of the respective duties of the judge and jury, the eminent jurist, Justice COOLEY, says, at page 392, Cooley, Const. Lim. (6th Ed.):

"And the jurors must be left free to act in accordance with the dictates of their judgment. The final decision upon the facts is to rest with them, and interference by the court, with a view to coerce them into a verdict against their convictions, is unwarrantable and irregular.

A judge is not justified in expressing his conviction to the jury that the defendant is guilty upon the evidence adduced.  Still less would he be justified in refusing to receive and record the verdict of the jury, because of its being, in his opinion, rendered in favor of the prisoner when it ought not to have been.  He discharges his duty of giving instructions to the jury when he informs them what, in his view, the law is which is applicable to the case before them, and what is essential to constitute the offense charged; and the jury should be left free and unbiased by his opinion to determine for themselves whether the facts in evidence are such as, in the light of the instructions of the judge, make out beyond any reasonable doubt that the accused party is guilty as alleged.

"How far the jury are to judge of the law as well as of the facts is a question a discussion of which we do not propose to enter upon.  If it be their choice to do so, they may return specially what facts they find established by the evidence, and allow the court to apply the law to those facts, and thereby to determine whether the party is guilty or not.  But they are not obliged in any case to find a special verdict.  They have a right to apply for themselves the law to the facts, and to express their own opinion, upon the whole evidence, of the defendant's guilt.  Where a general verdict is thus given, the jury necessarily determine in their own mind what the law of the case is, and, if their determination is favorable to the prisoner, no mode is known to the law in which it can be reviewed or reversed.  A writ of error does not lie on behalf of the commonwealth to reverse an acquittal, unless expressly given by statute, nor can a new trial be granted in such a case; but neither a writ of error nor a motion for a new trial could remedy an erroneous acquittal by the jury, because, as they do not give reasons for their verdict, the precise grounds for it can never be legally known, and it is always presumable that it was given in favor of the accused because the evidence was not sufficient in degree or satisfactory in character, and no one is at liberty to allege or assume that they have disregarded the law.

"Nevertheless, as it is the duty of the court to charge the jury upon the law applicable to the case, it is still an important question whether it is the duty of the jury to receive and act upon the law as given to them by the judge, or whether, on the other hand, his opinion is advisory only, so that they are at liberty either to follow

it if it accords with their own convictions, or to disregard it if it does not. In one class of cases (that is to say, in criminal prosecutions for libels) it is now very generally provided by the state constitutions or by statute that the jury shall determine the law and the facts. How great a change is made in the common law by these provisions it is difficult to say, because the rule of the common law was not very clear upon the authorities; but for that very reason, and because the law of libel was sometimes administered with great harshness, it was certainly proper and highly desirable that a definite and liberal rule should be thus established. In all other cases the jury have the clear legal right to return a simple verdict of guilty or not guilty, and in so doing they necessarily decide such questions of law as well as of fact as are involved in the general question of guilt. If their view conduce to an acquittal, their verdict to that effect can neither be reviewed nor set aside. In such a case, therefore, it appears that they pass upon the law as well as the facts, and that their finding is conclusive. If, on the other hand, their view leads them to a verdict of guilty, and it is the opinion of the court that such verdict is against law, the verdict will be set aside and a new trial granted. In such a case, although they have judged of the law, the court sets aside their conclusion as improper and unwarranted. But it is clear that the jury are no more the judges of the law when they acquit than when they condemn, and the different result in the two cases comes from the merciful maxim of the common law which will not suffer an accused party to be twice put in jeopardy for the same cause, however erroneous may have been the first acquittal. In theory, therefore, the rule of law would seem to be that it is the duty of the jury to receive and follow the law as delivered to them by the court; and such is the clear weight of authority. There are, however, opposing decisions, and it is evident that the judicial prerogative to direct conclusively upon the law cannot be carried very far, or insisted upon with much pertinacity, when the jury have such complete power to disregard it, without the action degenerating into something like mere scolding. Upon this subject the following remarks of Mr. Justice Baldwin, of the Supreme Court of the United States, to a jury assisting him in the trial of a criminal charge, seem peculiarly dignified and appropriate, and at the same time to embrace about all that can properly be said to a jury on this subject:

" ' In repeating to you what was said on a former occasion to another jury, that you have the power to decide on the law as well as the facts of this case, and are not bound to find according to our opinion of the law, we feel ourselves constrained to make some explanations not then deemed necessary, but now called for from the course of the defense.   You may find a general verdict of guilty or not guilty, as you think proper, or may find the facts specially, and leave the guilt or innocence of the prisoner to the judgment of the court.   If your verdict acquits the prisoner, we cannot grant a new trial, however much we may differ with you as to the law which governs the case; and in this respect a jury are the judges of the law, if they choose to become so.   Their judgment is final, not because they settle the law, but because they either think it is not applicable, or do not choose to apply it to the case.   But if a jury find a prisoner guilty, against the opinion of the court on the law of the case, a new trial will be granted.   No court will pronounce a judgment on a prisoner against what they believe to be the law. On an acquittal there is no judgment, the court do not act and cannot judge, there remaining nothing to act upon.   This, then, you will understand to be what is meant by your power to decide on the law; but you will still bear in mind that it is a very old, sound, and valuable maxim in law that the court answers to questions of law, and the jury to facts.   Every day's experience evinces the wisdom of this rule.'   *U. S.* v. *Wilson,* Baldw. 108."

In *Sparf* v. *U. S.*, 156 U. S. 51, there is an exhaustive collation of the authorities bearing upon this question. The court was divided upon the right of the judge to instruct the jury upon the legal presumptions arising from a given state of facts.   Some of the judges were of the opinion that the jury was the judge of the law as well as the facts.   In the majority opinion, which is in accord with the views of Justice CAMPBELL and Justice COOLEY which we have already quoted, the court is careful to indicate that, while the judge may instruct the jury as to the law of the case which governs it, he may not compel a verdict.   The language is as follows:

"We have said that, with few exceptions, the rules which obtain in civil cases in relation to the authority of the court to instruct the jury upon all matters of law arising upon the issues to be tried are applicable in the trial of criminal cases.   The most important of those exceptions is that it is not competent for the court in a criminal case

to instruct the jury peremptorily to find the accused guilty of the offense charged, or of any criminal offense less than that charged. The grounds upon which this exception rests were well stated by Judge McCRARY (Mr. Justice MILLER concurring) in *U. S.* v. *Taylor*, 3 McCrary, 500, 505. It was there said:

" ' In a civil case, the court may set aside the verdict, whether it be for the plaintiff or defendant, upon the ground that it is contrary to the law as given by the court; but in a criminal case, if the verdict is one of acquittal, the court has no power to set it aside. It would be a useless form for a court to submit a civil case involving only questions of law to the consideration of a jury, where the verdict, when found, if not in accordance with the court's view of the law, would be set aside. The same result is accomplished by an instruction given in advance to find a verdict in accordance with the court's opinion of the law. But not so in criminal cases. A verdict of acquittal cannot be set aside, and, therefore, if the court can direct a verdict of guilty, it can do indirectly that which it has no power to do directly.'

" We are of opinion that the court below did not err in saying to the jury that they could not, consistently with the law arising from the evidence, find the defendants guilty of manslaughter, or of any offense less than the one charged; that, if the defendants were not guilty of the offense charged, the duty of the jury was to return a verdict of not guilty. No instruction was given that questioned the right of the jury to determine whether the witnesses were to be believed or not, nor whether the defendants were guilty or not guilty of the offense charged. On the contrary, the court was careful to say that the jury were the exclusive judges of the facts, and that they were to determine—applying to the facts the principles of law announced by the court—whether the evidence established the guilt or innocence of the defendants of the charge set out in the indictment.

"The trial was thus conducted upon the theory that it was the duty of the court to expound the law, and that of the jury to apply the law as thus declared to the facts as ascertained by them. In this separation of the functions of court and jury is found the chief value, as well as safety, of the jury system. Those functions cannot be confounded or disregarded without endangering the stability of public justice, as well as the security of private and personal rights."

In *People* v. *Mortimer*, 48 Mich. 37, it is said:

"In this State, in criminal as well as in civil cases, it is the duty of the court to instruct the jury upon the law, and it is the duty of the jury to accept the ruling. *Hamilton* v. *People*, 29 Mich. 173. It is, no doubt, in their power to disregard evidence, and to acquit persons whom they know to be guilty."

In *People* v. *Richmond*, 59 Mich. 570, the trial judge made a ruling, when the counsel for defendant said, "Of course, that ends the case." The court then directed a verdict of guilty, and the jury returned such a verdict. In disposing of the case the court said: "As defendant himself had sworn to his own guilt, and counsel had made the remark referred to, the court was right in so holding. Where all the facts are admitted, there is nothing for the jury to pass upon."

In the case of *People* v. *Kirsch*, 67 Mich. 539, the facts were agreed to and were admitted. The court directed a verdict, but the verdict was rendered by the jury.

In the case of *People* v. *Neumann*, 85 Mich. 98, the following language is used:

"Whenever there is no question of intent in a criminal case, and no inferences, about which reasonable men might differ, to be drawn from the facts, and where, upon the admitted facts, the only question to be determined is whether, under the law, the statute has been violated, the trial judge may, with perfect propriety, state to the jury that the law applied to the facts, which are undisputed, shows the defendant to be guilty of the offense charged, and that it is their duty so to find under the facts and the law. But it has been repeatedly held that he cannot, in so many words, direct them that they must bring in a verdict of guilty; and that they are at liberty to find otherwise, if they see fit, under the Federal Constitution, which guarantees to every accused person 'the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed.' And verdicts have often been set aside when directed by courts in opposition to this right. See *U. S.* v. *Taylor*, 3 McCrary, 500, 11 Fed. 470, and cases there cited. But in this State, where a judge has directed

a verdict of guilty, and the jury have followed such direction, and the facts are admitted or undisputed, and the only question is one of law, applied to such facts, a new trial will not be granted, if the judge was right in his application of the law. No injustice can be done the accused in such case, as it is not to be presumed that a jury will find in opposition to the law from mere whim, caprice, or prejudice, although they may have the right to do so. In this ruling we do not intend to encourage the practice of directing a verdict against the accused in criminal cases. In all such cases the jury should be permitted to retire to the jury-room, and there deliberate, and the trial judge should content himself by stating the law as applied to the facts, and with an admonition to the jury of their plain duty in the premises."

In *People* v. *Collison*, 85 Mich. 105, the facts were admitted. The judge directed a verdict, and, without sending the jury out, directed the clerk to enter the verdict. The court set the verdict aside, using this language:

"We think, however, that the court erred in discharging the jury, and directing a verdict of guilty to be entered by the clerk. In no sense can this be said to have been a trial by a jury. The verdict of the jury is absolutely wanting. If the defendant in a criminal case cannot waive a trial by jury, it is difficult to see how this conviction can be sustained. In the case of *People* v. *Neumann*, 85 Mich. 98, and in the several cases therein referred to in support of the conclusion arrived at there, the jury acquiesced in the direction of the court; but here the court gave the jury no opportunity to follow or to refuse to follow the court's direction; in fact, there was no direction to the jury, but one to the clerk to enter a verdict."

In *People* v. *Repke*, 103 Mich. 459, it is held that, in criminal as well as civil cases, it is the duty of the judge to instruct the jury as to the law of the case; citing *Hamilton* v. *People, supra,* and *People* v. *Mortimer, supra;* the judge adding:

"But, as was said in the last case, 'It is, no doubt, in their power to disregard evidence, and to acquit persons whom they know to be guilty.' The court in the present

case did recognize this power, and expressly told the jury that they could acquit, but, if they found the respondent guilty at all, it must be for murder in the first degree."

The question was submitted to the jury, and the verdict was returned by them.

In *People* v. *Hawkins*, 106 Mich., at page 488, is a statement of what was done, in the following language:

" It is not claimed that the evidence stated by the court is disputed, and the point of this request appears to be that the jury should not have been told the court's opinion about it. He prefaced what he said about the evidence by leaving the question to them, and followed it by sending them to their room to determine the question of guilt or innocence. It is settled by former adjudications that it is the duty of the jury to take the law from the court, and that where there. is no conflict in the evidence, and the defendant in open court admits facts legally constituting an offense, the court may so state, and even go so far as to direct a verdict. In this case the defendant had practically sworn to his own guilt, yet, in the abundance of his caution, the court left the question of intent to the jury. *People* v. *Richmond*, 59 Mich. 570; *People* v. *Ackerman*, 80 Mich. 588."

Our attention has not been called to a case in which the judge undertook to enter a verdict for the jury when the latter failed to follow the instructions of the court, and it is not believed such a case can be found. The cases of *People* v. *Neumann, supra,* and *People* v. *Collison, supra,* indicate very clearly that, should a judge attempt to return a verdict for the jury, he would be trespassing upon the province of the jury. In all the cases where a verdict was directed, the only question involved was a question of law. As a rule, the facts were admitted, so that it was simply a question of whether the admitted facts under the law showed respondent was guilty of the crime. Here the facts were not admitted. It became the duty of the people to show by competent evidence the guilt of the accused. It was for the court to say what evidence was competent, and to decide whether it should be admitted or not; but, after it was admitted, it was for

the jury to say what weight should attach to it. The jury were not obliged to believe a witness simply because he had been sworn. Can it be said that in this case the action of the jury cannot be accounted for upon the theory that they did not believe some of the witnesses? Whether that can be said or not, the fact remains that, under the Constitutions of the United States and this State, before a respondent can be convicted of a felony upon a plea of not guilty, a verdict of guilty must be rendered against him by the jury. While it is the duty of the jury to take the law from the judge, and be guided by it, still, if the jury does not do its duty, its failure to do so does not confer upon the judge added power, and authorize him to usurp the functions of the jury, and return a verdict of guilty himself. The right of the trial judge to direct the jury in relation to the law of the case is not conceded in all of the courts, but, as we have already seen, that question is no longer an open one in this State. When, in addition to that right, it was held that, in cases where the facts were admitted, the trial court might direct the jury to return a verdict of guilty, the border line separating the functions of the trial judge from the province of the jury was reached. If another step is to be taken, and, in addition to the right to direct a verdict, it is held the judge may, when the jury is unwilling to follow the direction of the court, compel a verdict, then the border line is passed, the judge has entered upon the province of the jury, the constitutional guaranty of a right of trial by jury in criminal cases is overthrown, and the judge has drawn to himself power which has not been exercised by any trial judge since the days of *Magna Charta.*

The statute under which this information is filed reads as follows:

"*The People of the State of Michigan enact,* That if any person holding any public office in this State, or if the agent or servant of such person, knowingly and unlawfully appropriates to his own use, or to the use of any other person, the money or property received by him in

his official capacity or employment, of the value of fifty dollars or upwards, the person so offending shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the state prison, at hard labor, not to exceed ten years, or by fine not exceeding five thousand dollars, or both said fine and imprisonment." 3 How. Stat. § 9263*a.*

It is the claim of the attorneys for respondent in relation to this statute that before one can come within its provisions, so as to make himself a felon, he must knowingly and unlawfully appropriate the money to his own use, or to the use of some other person, with an intent to so appropriate it as to forever exclude the rightful owner from its use and possession. We do not think the statute is susceptible of such construction. Section 9263*c* provides that the failure or refusal of any public officer to pay over and deliver to his successor all moneys and property which should be in his hands as such officer shall be *prima facie* evidence of the offense. It is true that in *People* v. *Seeley*, 117 Mich. 263, it was said that a *prima facie* case may be rebutted, as in that case, by showing the money which should be in respondent's hands never came to him. I suppose, too, that, if the accused was prevented from paying over the money by its being burned or stolen when in a proper place of deposit, that would rebut the implication that he had knowingly and unlawfully appropriated it to his own use. Other things might arise which would excuse him. It cannot be said of most men that, when they use public funds, they mean to permanently retain them. Experience shows that frequently they are lost because used for speculative purposes; the user expecting to return them, but failing to do so because his speculation did not turn out as he expected. The intention of the statute was to prevent any public official from using money or property coming to him in his official capacity for any other purpose than the purpose for which it came to him. If he does knowingly use it, or permit others to do so, for other purposes than the one for

which it was intrusted to him, then he comes within the provisions of the statute.

It is necessary to refer to but one other assignment of error. Mr. Lemon, who was one of the bondsmen of respondent, had testified to admissions made to him by respondent, and to payments made by his fellow bondsmen and himself. Upon cross-examination it was attempted to show all the conversation he had upon that occasion with the respondent, and the entire transaction about the payment. This was excluded. We think it proper cross-examination, and that it should have been admitted.

For the errors mentioned the conviction is reversed, and a new trial ordered.

The other Justices concurred.