PEOPLE *v.* NORTH.

1. INTOXICATING LIQUORS—OFFENSES—MALT LIQUOR—WHAT CONSTITUTES.

   Engaging in the business of selling a malt liquor containing about two per cent. of alcohol without having paid the tax constitutes a violation of sections 5379, 5380, 2 Comp. Laws. Per HOOKER, J., GRANT, C. J., and MONTGOMERY, J.

2. CRIMINAL LAW—RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW —DIRECTION OF VERDICT—COERCION.

   Though the trial court in a criminal case may inform the jury that, under the evidence, they should render a verdict of guilty, he may not compel them to render such a verdict; and an instruction that "you should find a verdict of guilty as charged, without leaving your seats, and the clerk will take the verdict," violates the constitutional right of trial by jury. HOOKER, J., GRANT, C. J., and MONTGOMERY, J., dissenting.

Exceptions before judgment from Ingham; Wisner, J., presiding. Submitted May 7, 1908. (Docket No. 87.) Decided July 13, 1908.

George North was convicted of violating the liquor law. Reversed.

*L. B. Gardner* and *Richard Raudabaugh*, for appellant.

*Walter S. Foster*, Prosecuting Attorney, for the people.

HOOKER, J. The defendant was convicted of being engaged in the business of unlawfully selling malt, brewed, vinous, and fermented liquors, at retail, without having paid the tax required by law. The testimony was undisputed. At its conclusion the learned circuit judge said to the jury:

" In a case where the facts are undisputed and sufficient of them are undisputed to make a case in favor of the people, then it is the duty of the court to tell the jury so, and to ask them to find a verdict in accordance with that fact. * * * Now, as I understand the law, gentlemen, the sale of that mixture is a violation of it, and the respondent himself having testified that he knew what it was, having testified that he knew that it contained some alcohol, that he must answer to the law for these sales, it appearing there is no testimony that he made more than one sale, furnished three glasses at the request of the officer, three glasses at the request of somebody else, making two sales, and making enough, under the law, as I understand it, to constitute him a dealer or a person engaged in the business. * * * I think it is my duty, and I instruct you that you should find a verdict against this respondent of guilty as charged, without leaving your seats, and the clerk will take the verdict."

Two questions are raised: *First,* whether the sale of malt liquor containing about two per cent. of alcohol was within the statute; *second,* whether it was error to direct the jury to find a verdict of guilty without leaving their seats. Sections 5379 and 5380, 2 Comp. Laws, justify the conclusion of the circuit judge upon the first question, and while the question was not discussed in *People* v. *Wilcox,* 152 Mich. 39, it was necessarily involved in that case. The charge of the court was not erroneous, being sustained by former adjudications cited in *People* v. *Gardner,* 143 Mich. 104, and *People* v. *Neal,* 143 Mich. 271. The former case distinguished the case of *People* v. *Collison,* 85 Mich. 105. See, also, *People* v. *Elmer,* 109 Mich. 493; *People* v. *Schottey,* 116 Mich. 1.

It is suggested that this record shows that the jury were not permitted to render a verdict of not guilty. If that is true, there was error, and the case should be reversed, but that is not to be presumed; it must appear from the record. We have quoted what was said by the learned circuit judge. He did not say to the jury, " You must render a verdict." On the contrary, he said by implication, in the first paragraph, that it was his duty to tell the jury

that the undisputed proof made a case for the people and to ask them to find a verdict in accordance with that fact. He explained the situation at length in the second paragraph, and in the third he said: "I instruct you that you *should* find a verdict against this respondent of guilty as charged, without leaving your seats." The vice in this instruction, if there is vice in it, consists of the direction that it was their duty to find a verdict of guilty "without leaving your seats." It is no unusual thing for a jury to render a verdict, even in criminal cases, without leaving their seats, and in the absence of some indicated unwillingness to follow the instructions (which were clearly justified by the proof), there is no reason for thinking any juror was coerced into an unwilling verdict, and to reverse this case upon this ground is to overturn the conviction on a technicality. The cases of *People* v. *Warren*, 122 Mich. 504, and *People* v. *Remus*, 135 Mich. 632, 633, are relied on as condemning the practice followed in this cause. It must be admitted that as to the former there was a clear case of coercion of the jury into the rendition of a verdict against their convictions. In charging the jury that it was their duty to render a verdict of guilty, and sending them out to deliberate, the trial judge followed a practice which has been repeatedly sustained. But they returned into court manifestly unwilling to comply, and what occurred there conclusively shows that the verdict was the result of subsequent emphatic statements by the judge that they had no legal right to disregard his instructions. The entire court concurred in holding this to be error. We say, in substance, in that case, that it is settled in this State that a judge may direct a verdict of guilty, but may not compel it; a proposition the latter part of which has never been questioned in any of the cases decided in Michigan.

In *People* v. *Remus*, supra, the trial judge directed a verdict, and, after being out all night, the jury returned into court, and said that they were unable to agree, when the court said:

"Gentlemen of the jury, it is your duty to return a verdict of guilty in this case. Now you will return to your room, and you will come in, under these instructions, and bring in a verdict of guilty."

This they then did and the court denied the demand of defendant's counsel that the jury be polled. That this was error is apparent, and we so held, and the language used may be reasonably construed as applicable merely to such a case as was then made, and not necessarily applicable to a case where indications of coercion are wanting.

I assume that in all cases of misdemeanor it is proper to direct a verdict of guilty upon admitted facts or where the offense is conclusively proved by uncontradicted testimony. If this is so, this case differs from the many where directed verdicts of guilty have been sustained, only in the fact that the judge told the jury that it was their duty to render such a verdict "without leaving your seats." We should not assume that this was any more coercive than as though he had omitted the direction as to leaving their seats, and they had at once, and without leaving their seats, conferred together and rendered such a verdict. Neither should we assume that they did not so confer together, before rendering the verdict and agree, nor that the clerk in taking the verdict omitted to take it in the manner required by law and in accordance with the form books, viz., "Gentlemen, have you agreed upon a verdict?" "What is your verdict?" "Listen to your verdict as recorded. You do say upon your oaths," etc. Had there been a deviation from this, it should have been made to appear in the bill of exceptions as it was in *People* v. *Collison*, 85 Mich. 107, and not so appearing we will not assume any deviation from the forms of law, especially in a substantial particular, and in face of the decision in the *Collison Case*, supra, with which the trial judge was doubtless familiar. Error is not to be presumed even in a criminal case.

In the case of *People* v. *Neumann*, 85 Mich. 98, it is inferable that the jury did not leave the court-room, yet

the judgment was affirmed. Mr. Justice Morse concluded his opinion in that case as follows:

"But in this State, where a judge has directed a verdict of guilty, and the jury have followed such direction and the facts are admitted or undisputed, and the only question is one of law, applied to such facts, a new trial will not be granted, if the judge was right in his application of the law. No injustice can be done the accused in such case, as it is not to be presumed that a jury will find in opposition to the law from mere whim, caprice, or prejudice, although they may have the right to do so.

"In this ruling we do not intend to encourage the practice of directing a verdict against the accused in criminal cases. In all such cases the jury should be permitted to retire to the jury room, and there deliberate, and the trial judge should content himself by stating the law as applied to the facts, and with an admonition to the jury of their plain duty in the premises.

"The conviction in this case is affirmed."

It immediately preceded the *Collison Case*, both cases being submitted and decided on the same days. The *Neumann Case* does not go the length of saying expressly that a verdict of guilty may, or that it may not, be directed. The former is clearly implied, however, by the affirmation of the judgment, and it has been expressly so held since, as it had been before. *People* v. *Richmond*, 59 Mich. 573; *People* v. *Hawkins*, 106 Mich. 479; *People* v. *Neal*, 143 Mich. 271; *People* v. *Gardner*, 143 Mich. 104, 116.

We find no error, and the judgment should be affirmed.

Grant, C. J., and Montgomery, J., concurred with Hooker, J.

Carpenter, J. The facts in this case are stated in the opinion of Justice Hooker. I think there should be added, however, at the conclusion of his quotation from the charge of the court, this:

"Now, gentlemen, if you want to lodge exceptions before sentence, I will give you the opportunity to do so, that you may go to the Supreme Court to see whether I am right or not."

This addition serves to indicate, what perhaps might otherwise clearly appear, that the charge was not intended to give the jury any responsibility respecting the rendition of the verdict. Nor do I understand that the jury actually did render a verdict. I infer that the clerk took their verdict as a mere matter of form. I find it impossible to reconcile this practice with the rule laid down in *People* v. *Warren*, 122 Mich. 504, followed by *People* v. *Remus*, 135 Mich. 629–634. I think that from *People* v. *Warren*, supra, and the cases there cited, it may be said that a trial court may inform a jury in a criminal case that they should render a verdict of guilty, but he cannot compel them to render such a verdict. I think that in this case they were compelled to render such a verdict, and that for that reason we must set aside the conviction.

BLAIR, OSTRANDER, MOORE, and McALVAY, JJ., concurred with CARPENTER, J.