### PEOPLE *v.* NORMAN.

INTOXICATING LIQUORS—SUNDAY OPENING—CRIMINAL LAW.

A saloon which is accessible on Sunday from the living apartments of its proprietor, and used by boarders as a means of egress, is open in violation of the Sunday closing law.

Exceptions before judgment from Delta; Stone, J. Submitted June 17, 1909.  (Docket No. 123.)  Decided July 15, 1909.

Henry Norman was convicted of violating the liquor law.  Affirmed.

*Cummiskey & Spencer*, for appellant.

*John E. Bird*, Attorney General, and *A. H. Ryall*, Acting Prosecuting Attorney, for the people.

MONTGOMERY, J.  The respondent was convicted of the offense of keeping his saloon open on Sunday.  The people offered testimony showing that the saloon was open on that day, and that a number of people were in the saloon,

and that some person was behind the bar dispensing liquor to those assembled. To meet this case, the respondent testified that he himself was not in the saloon, and that he had but one man in his employ as bartender, Oscar Johnson, who was also called, and testified that he was not in the saloon on that day. The respondent, on cross-examination, testified to the arrangement of his saloon as follows:

"This building that I occupy as a saloon is a long, narrow building, and faces on Ludington street, with the main entrance on Ludington street. There is a partition a little ways back in the building, about six feet from the front door. Back of that is the bar. There are no stoves, chairs, or tables in the barroom. Beyond the back of the bar there is a partition again. Then there are tables, chairs, and a stove. From there the stairs run upstairs. Back of this second room is where I lived, on the ground floor. The barroom enters into this room where the chairs and tables and that sort of stuff are. The side door goes right into the barroom. If you wanted to go upstairs, you would come from the west side into the barroom, and step out into the other room, if you wanted to go upstairs. I kept boarders and roomers upstairs. The dining room was downstairs on the other side of the stairway. Back of the dining room there is a bedroom, where I lived. The next bedroom is my bedroom, and back of that to the north is the kitchen, so that between my bedroom and the barroom was the big room and the stairway. Then there is the dining room and the kitchen, and then my bedroom. Dr. Groos and Dr. Fenelon were there on that Sunday. My wife died on February 7th. I was not out of the building at all on that day. I slept in the same room where my wife was sick. I was in her bedroom and in the other part of the house, but not outside that day. I took my meals in the kitchen. I didn't go to the dining room to eat anything, and I was not upstairs that day. I was not in the room where these chairs, tables, and stove are or in the barroom. My wife had been sick for about a month and a half before. I had been going about my business in the ordinary way, but this particular Sunday I stayed in that room all day. This bartender had a key to the front door. On this side door I have an iron bar put across. I didn't have any key for the side door. I had boarders, and the only way

they could get out was to go down through this room and out through the barroom. That day, of course, my wife was sick, and I don't know where they were keeping themselves. At that time I had at least two boarders. They stayed there the night before. I got a snap lock on the door that goes up the stairway, so that we can go in that way to and from the stairway, right from the dining room into the stairway. There were three outside doors on the west side. One is for the saloon, one is for the stairway, right into the dining room, and then one for the kitchen; and they are all on the west side.

"*Q.* But the general way of going out was through the barroom and out. That was the usual way?

"*A.* To go into the barroom. The side door, the first door, on the west side goes into the barroom. The second door goes for the upstairs and for the dining room, and into this back room."

The circuit judge, while not directing a verdict for the people, stated that the case made by the prosecution had not been met by the proof offered on the part of the defendant. There was no error in this if the facts, taken as a whole, show that the saloon was not kept closed on that day. See *People* v. *North*, 153 Mich. 612 (117 N. W. 63). It is the settled law in this State that the proprietor of a saloon must see that it is kept closed on Sunday and during certain hours of the night. See *People* v. *Waldvogel*, 49 Mich. 337 (13 N. W. 620); *People* v. *Cummerford*, 58 Mich. 328 (25 N. W. 203); *People* v. *Cox*, 70 Mich. 247 (38 N. W. 235); *People* v. *Hughes*, 97 Mich. 543 (56 N. W. 942); *People* v. *Schottey*, 116 Mich. 2 (74 N. W. 209).

Reading the testimony of the respondent in the present case, it is apparent that this room connecting with the barroom and between which and the barroom there was no door fastened was the usual means of egress of the boarders. In other words, that it was open and accessible to any of the boarders and employés. It is true the testimony tends to show that the side door was kept fastened by a bar, but the access to this room from the other rooms of the building is not shown by the testimony

to have been cut off. If it was open so that these boarders and employés could go into the room, it was not kept closed within the meaning of the law as laid down in the cases cited above. The court was therefore not in error in saying to the jury that the testimony of the respondent had not overcome the testimony offered by the people.

The conviction is affirmed.

BLAIR, C. J., and GRANT, MCALVAY, and BROOKE, JJ., concurred.