STATE, Respondent, v. FOSBURGH, Appellant.

(143 N. W. 279.)

1. **Libel and Slander—Criminal Prosecution—Information—Evidence—Falsity of Libel.**

Under Penal Code, Sec. 318, concerning evidence of the truth of the matter charged as libel, and the motives for publication thereof, held, that the state need neither allege nor prove the falsity of the libel.

2. **Same—"Libel"—Presumptions—Proof.**

Under Penal Code, Sec. 315, defining "libel," and Sec. 316, making it a misdemeanor to publish a libel wilfully and with malicious intent to injure another, an intent to injure must be proved; but the intent may be presumed from the fact of the publication and the nature of the libelous article.

3. **Same—Information—Words Used in Statute.**

Under Pen. Code, Sec. 315, defining "libel," an intent to injure the party libeled must be pleaded, but not necessarily in the language of the statute, in view of Sec. 228, Code Crim. Proc., providing that statutory words defining a public offense need not be strictly pursued in pleading, but that other words conveying the same meaning may be used.

4. **Same—Information—Intent—Sufficiency.**

An information charging that accused unlawfully, wilfully, and maliciously published concerning S. a false, scandalous, and malicious libel, and that it was a malicious defamation of his character, tending to provoke him to wrath, and to expose him to public hatred and ridicule, and to deprive him of the benefit of public and social intercourse, was not demurrable as failing to allege an intent to injure the party libeled.

5. **Same—Evidence—"Appetite for Lust"—Question for Jury.**

In a prosecution for publishing, concerning a former manager of accused's newspaper, that the newspaper was loaded with a burden of debt "to satisfy an alleged man's appetite for * * * lust," testimony that witnesses understood the words as intended to charge said former manager with adultery was inadmissible, there being no claim that the words had any peculiar meaning in the community, since it was for the jury to determine, without any such evidence, what there was of a libelous nature in the words published.

6. **Same—Criminal Libel—Words Libelous Per Se.**

An alleged libel charging that a newspaper was loaded with a burden of debt to satisfy an "alleged man's appetite for lust," was subject to an interpretation rendering the words libelous per se.

7. **Same—Criminal Libel—Evidence—Truth of Immaterial Matter.**

In a prosecution for criminal libel, it could not be shown

that parts of the publication not made the basis of the charge were true, or justifiable.

8. **Same—Justification—Truth of Words in One Sense.**

One charged with criminal libel cannot select one of several constructions that may be fairly given the words used, and prove the truth of the libel when so construed, but must prove their truth when the words are given any fair and usual construction, as it must be presumed that they will be so construed by at least a part of the readers.

9. **Same—Justification—Motives and End of Publication.**

Under Pen. Code, Sec. 318, providing that, in criminal prosecutions for libel, the truth may be given in evidence, and that if the truth of the charge appears, and that the matter was published with good motives and for justifiable ends, acquittal shall follow, the burden is on defendant who admits the publication, to prove the libel true, and that it was published with good motives and for justifiable ends, and thus overcome the presumption of malice that would otherwise flow from publication of that which must necessarily tend to injure the good name of another.

10. **Same—Criminal Libel—Justification—Meaning of Words—Defendant's Version.**

Accused published concerning S., former manager of the paper edited by him, who, it was claimed, had wasted its assets, and was then spreading reports concerning its financial condition, and endeavoring to take advertisers therefrom, that the paper was loaded with a burden of debt "to satisfy an alleged man's appetite for lust." Defendant denied intending to charge adultery, but testified he used the word "lust" as meaning an unnatural craving, "it might be for booze, it might be for women;" and to prove its truth he offered evidence tending to show S. a moral pervert, that he had been guilty of most indecent conduct and, that if not guilty of adultery, he had refrained through fear of resulting physical ills, or because prevented by temporary or permanent impotency. The only motive to which he testified was that he might financially benefit his paper. **Held,** that no justification was shown for the publication of a libel whose truth could only be proved by heaping shame and disgrace on those near and dear to S., within Pen. Code, Sec. 318, requiring acquittal where jury is satisfied that the matter charged is true, and was published with good motives and for justifiable ends.

11. **Criminal Law—Criminal Libel—Erroneous Evidence and Instructions—Malice and Unlawful Intent Presumed—Harmless Error.**

Where, on a trial for criminal libel, accused wholly failed to show the publication made with good motives and for jus-

tifiable ends, and unrefuted presumptions both of malice and intent to injure flowed from his concessions of what he did, and the words used were open to a construction rendering them libelous per se, the erroneous admission of evidence, as to how they were understood by witnesses, and the giving of instructions, and refusing to give others, which might have been erroneously given or refused, as to the meaning and truth of the publication, none of which errors in any way related to or could affect the affirmative defenses incumbent on defendant to prove, and not proven, were harmless errors within Code Cr. Proc., Sec. 500, requiring the Supreme Court to give judgment without regard to technical errors, or defects, or exceptions not affecting the substantial rights of the parties.

McCoy, J., taking no part in the decision.

(Opinion filed Oct. 6, 1913.   Rehearing denied Nov. 17, 1913.)

Appeal from Circuit Court, Grant County.   Hon. FRANK McNULTY, Judge.

George M. Fosburgh was convicted of criminal libel, and he appealed.   Affirmed.

*Thomas L. Bouck,* for Appellant.

The information under Secs. 315, 316, Pen. Code, and Sec. 29, Civ. Code, is faulty in two particulars.   One is that it fails, except by way of recital, to state that the libel was false, and the other is that it fails to allege that the publicaion was made "with a malicious intent to injure another."   Sec. 317, Pen. Code; State v. Ullman, 5 Minn. 13; State v. Butcher, 1 S. D. 401, 47 N. W. 406; State v. Burchard, 4 S. D. 548, 57 N. W. 491; State v. Tarlton, 22 S. D. 495, 118 N. W. 706.

The article published by the defendant concerning said Smull was in ordinary every day language, which could be understood by the jury.

The evidence of Smull as to the meaning of the language was purely a conclusion, simply giving his understanding and construction of the word "lust."   So was that of Sexton.

Evidence of this character is inadmissible under circumstances such as were presented in this case.   Hearne v. De Young, 119 Cal. 670, 52 Pac. 150; Republican Publishing Co. v. Miner, 12 Colo. 77, 20 Pac. 335; Quinn v. Prudential Ins. Co., 116 Iowa, 522, 90 N. W. 349; Gribble v. Pioneer Press Co., 37 Minn. 277, 34 N. W. 30; Snell v. Snow, 13 Metc., 54 Mass. 278.

To establish these defenses and justifications, evidence should

have been admitted as to the truth of the entire publication. If the publication was libelous, the jury should have considered it in its entirety. Perry v. Breed, 117 Mass. 155; O'Neil v. Adams, (Iowa) 122 N. W. 976; McClure v. Review Publishing Co., 38 Wash. 160, 80 Pac. 303; Leonard v. McPherson, 146 Cal. 616, 80 Pac. 1084.

Defendant should have been allowed to show that Smull was responsible for the bad financial condition of the paper, and also that he was worthless financially and insolvent; and his habits of drunkenness and dissipation and inordinate desire of the witness for booze and dope, as that was part and parcel of the charge and was "lust" in itself. These matters went directly to the intent of the defendant in making the publication, and as to the necessity therefor. 25 Cyc. 584; O'Neil v. Adams, supra; State v. Putnam, (Ore.) 100 Pac. 2.

Webster defines lust: vigor, active power, inclination, willingness, desire,—longing desire,—eagerness to possess or enjoy as "the lust of gaining." "The lust of reigning."—Milton.

"My lust shall be satisfied upon them."—Ex. XV. 9.

"Thou mayest kill and eat flesh and in all thy gates whatsoever thy soul lusteth after."—Duet. XII. 15.

Standard dictionary gives: an eagerness to possess or enjoy, licentious craving; sexual appetite.

Under the above definitions, the court should have allowed the defendant to give evidence as to the whole course of conduct of said Smull, and then let the jury conclude as to whether the publication as a whole was truthful.

And the court should have instructed them that it was for them to say, under the evidence, whether or not the defendant was justified in using the word, and what it meant. Hearne v. De Young, supra; Randall v. Evening Sun Association, (Mich.) 60 N. W. 301; Ross v. Ward, supra; Eddy v. Cunningham, (Wash.) 125 Pac. 61.

*Royal C. Johnson,* Attorney General, *M. Harry O'Brien,* Asst. Atty. Gen., *George S. Rix,* State's Attorney, for Respondent.

The information sufficiently complies with the language of Secs. 229, 230, Code Civ. Proc., since the language relied on is actionable per se. 25 Cyc. 575, and cases cited; 22 Cyc. 336-338; Peo. v. Seeley, 139 Cal. 118, 72 Pac. 834; Territory v. Bannigan, 1

Dak. 432, 46 N. W. 597; Com. v. Sherman, 189 Mass. 76, 4 Am. & Eng. Ann. Cas. 268.

It is not necessary, to constitute the offense of libel, that the publisher should have entertained a specific malicious intent "to injure and defame" the prosecuting witness, as the natural and probable consequences of the publication are to injure and defame, and the law will infer that the publisher intended the results of his act. Greenleaf on Evidence, 618; 2 Wharton's Criminal Law, Sec. 1648; 2 Bishop's New Criminal Law, Secs. 922-923; Com. v. Snelling, 15 Pick. 337 (Mass.); Haley v. State, 63 Ala. 83; 1 McClain on Criminal Law, Sec. 123, et seq.

Where the words which are the basis of the action have a double meaning, testimony of one who read the words, as to his understanding thereof, is admissible. Arnold v. Lutz, 141 Iowa, 596, 120 N. W. 121; Julian v. Kan. Co., 209 Mo. 35, 107 S. W. 496; Sasser v. Rouse, 35 N. C. 142; Barton v. Holmes, 16 Iowa, 252.

On the general proposition of limiting the issues in this prosecution; the information herein designates the particular language upon which the state will rely, and evidence that does not relate thereto is properly excluded. Rigley v. State, 75 Md. 510, 23 Atl. 1099.

The state, in the case at bar, relied on the libelous charge of "lust," which, imputed to a married man, such as the complaining witness, Mr. Smull, charged him with adultery. The defendant admitted the publication, and is bound to establish the truth of the charge. Evidence not relating to the charge of adultery, or lust, was inadmissible. Where one phase of the publication is libelous and the remainder is not, the latter should be execluded from the jury. Squires v. State, 39 Tex. Cr. 96, 45 S. W. 147, 73 A. S. R. 904; Townshend on Libel and Slander, pp. 665-666.

It is not an excuse for publishing a criminal libel, that the complaining witness circulated false reports in regard to the defendant or his business. Prior libel by the complaining witness would not be an excuse. Sternberg Co. v. Miller, 170 Fed. 298, 18 Am. & Eng. Ann. Cas. 69.

WHITING, P. J. Appellant was convicted of the crime of libel, and has appealed to this court. He assigns as errors the

overruling of his demurrer to the information, certain rulings upon the admission and rejection of evidence, the refusal to give certain instructions asked for, and the giving of certain instructions.

The demurrer specified as grounds thereof: "(1) That said information does not state facts sufficient to constitute a public offense. (2) That said information is so indefinite and uncertain that it does not state facts that will enable a person of common understanding to know what offense is intended to be charged."

[1-3] It is appellant's contention that the information was insufficient in that it nowhere charged that the libel was false, and did not allege that the libel was published with "intent to injure" the party libeled.

Section 318, Penal Code, provides: "Sec. 318. In all criminal prosecutions or indictments for libel the truth may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted." Under this section the state need neither allege nor prove the falsity of the libel.

Sections 315 and 316, Penal Code, are as follows:

"Sec. 315. Any malicious injury to good name, other than by words orally spoken, is libel.

"Sec. 316. Every person who willfully, and with malicious intent to injure another, publishes any libel, is guilty of a misdemeanor."

Under section 316 there must be proven an intent to injure, which intent may be presumed from the fact of the publication and the nature of the libelous article. The intent to injure being necessary in order to constitute the offense, such intent must be pleaded, but not necessarily in the language of the statute.

Section 228, Code of Criminal Procedure, provides: "Sec. 228. Words used in a statute to define a public offense, need not be strictly pursued in the indictment or information; but other words conveying the same meaning may be used."

[4] The information charged that appellant did "then and there unlawfully, willfully, and maliciously write and publish of and concerning one John D. Smull, which was intended to and did refer to the said John D. Smull, a certain false scandalous and

malicious libel," and, further, that "said libel was a malicious defamation of the character of the said John D. Smull tending to provoke him, the said John D. Smull, to wrath, and expose him, the said John D. Smull, to public hatred and ridicule, and to deprive him, the said John D. Smull, of the benefit of public and social intercourse." We think that in line with the holdings of this court in State v. Edmunds, 20 S. D. 135, 104 N. W. 1115, and State v. Flute, 20 S. D. 562, 108 N. W. 248, the demurrer was properly overruled.

The libel was published by appellant in a newspaper of which he was the editor. The article in question, after referring to certain reports concerning the financial standing of appellant's paper —which reports, it is charged, were malicious, and were being circulated by the former manager of such paper—stated that the writer "knows this ex manager's history like a book from the time he assumed control of this paper down to the present time, and when we get ready to publish it we shall hew to the line, and let the chips fall where they may," and closed by stating that such paper would "in a very short time be out from under the burden of debt which was loaded upon it to satisfy an alleged man's appetite for booze and lust." It was upon the latter quotation, omitting the words "booze and," that the charge was based. It was conceded that the libel referred to one Smull.

[5, 6] The state offered and there was received in evidence, over appellant's objection, the testimony of Smull and one other witness as to what they understood was meant by the words upon which the charge was based. They testified that they understood that by such words it was intended to charge that Smull was guilty of adultery. There was no claim that the words published had any peculiar meaning in the community where the paper was published and circulated, and it seems to us that the admission of this evidence was clearly error. These witnesses were not expert lexicographers, and it certainly was for the jury, without any such evidence, to say what there was, if anything, of a libelous nature in the words published, and upon which the charge against appellant was based. But we think the error not prejudicial, because the words used were clearly subject to an interpretation rendering them libelous per se, and therefore, for reasons hereinafter stated, the verdict of the jury should not be set aside.

[7] The defense sought to prove that Smull, while managing the paper in question, had through the excessive use of intoxicants, squandered the assets of such paper. The state objected to such evidence, and it was excluded. This was clearly correct. A de-- fendant cannot be allowed to defend against a charge of libel by showing that those parts of his publication which are not made the basis of the charge preferred are either true or justifiable. Evidence upon such points would have been as immaterial as though there had been nothing in the publication in relation to Smull's squandering the assets of such paper for strong drink. The state had not charged and was not attempting to prove that such parts of the publication were libelous.

[8] Appellant contends that the trial· court, through its re- fusal to give certain instructions asked for, and through the giving of certain other instructions, did virtually prevent the jury from finding that the words published, when fairly construed, charged Smull with lustful indulgences not amounting to adultery, and at the same time did virtually prevent 'the jury from finding that Smull had been guilty of adultery—in other words, appellant com- plains that the jury was practically precluded from finding that Smull was guilty of the things charged in the libel. But it will not lie with a libelant to select one of several constructions that may be fairly given to the words used, and then prove the truth of the libel when so construed; but he must be ready to prove the truth of the libel when the words used are given any fair and usual construction, as it must be presumed that they will be so taken and construed by at least a part of their readers. Moreover, for reasons hereinafter stated, it was immaterial whether the libel was true or false, and the errors, if any there had been in giving and refusing instructions, were without prejudice.

At the common law the truth of a libel was, under no cir- cumstances, a defense to a criminal charge for the publication thereof—in fact it was a maxim of the common law that "the greater the truth, the greater the libel"—the truth could not be proven even in mitigation. This rule prevailed in England as late as the year 1843, when there was enacted Lord Campbell's Libel Act, under which, surrounded by many restrictions and safe- guards, a defendant could defend by showing the truth of the libel, and that its publication was for the public good. Without

legislation, the courts of this country early broke away from the severity of the common law, and we find, as early as the year 1809, the Supreme oCurt of Massachusetts, speaking through its Chief Justice, Parsons, in the case of Com. v. Clap, 4 Mass. 163, 3 Am. Dec. 212, saying: "Although the truth of the words is no justification in a criminal prosecution for libel, yet the defendant may repel the charge by proving that the publication was for a justifiable purpose, and not malicious, nor with the intent to defame any man. And there may be cases, where the defendant, having proved the purpose justifiable, may give in evidence the truth of the words, when such evidence will tend to negative the malice and intent to defame."

This same court, speaking through its then Chief Justice, Parker, in the case of Com. v. Blanding, 3 Pick. 304, 15 Am. Dec. 215, said: "There are certain cases in which the defendant in a prosecution for libel may acquit himself by showing an honest purpose and proving the truth of his allegations. The general principles upon which such a right depends are stated in the case of Commonwealth v. Clap, 4 Mass. 168 [3 Am. Dec. 212], though, without doubt, there are cases, other than those mentioned in the opinion of the court in that case, as illustrations of the general doctrine, in which the same principles will apply. The law, as laid down in the case before cited, has stood before the public nearly 20 years, and successive Legislatures must be presumed to have acquiesced in its wisdom and policy, or it would have been altered by the statute. The general principle decided is that it is immaterial to the character of a libel as a public offense whether the matter of it be true or false, not, as some have affirmed, because the law makes no distinction between truth and falsehood, but because the interest of the public requires that men not invested with authority by the laws shall not usurp the power of public accusation, and arraign before the public, with malicious motives, their neighbors and fellow citizens, exposing them to partial trials in forms not warranted by the Constitution or laws, and condemning them to a species of ignominy which is often a heavier punishment than the law would inflict for the offenses or misconduct of which they are thus officially accused. And surely, so long as preventive justice shall be deemed more salutary than vindictive, all wise governments will hold it necessary to curb the

disposition, always too prevalent, to excite ill-temper and ill-blood by exposing the offenses, faults, or foibles of men, who, if guilty of any violation of law, are amenable to punishment in the ordinary way, and, if liable to censure for private vices, irregularities of temper, or unaccommodating manners, should be left, as the law leaves them, to the correction of conscience, and those silent but powerful punishments which their misconduct itself will supply. No state of society would be more deplorable than that which would admit an indiscriminate right in every citizen to arraign the conduct of every other before the public in newspapers, handbills, or other modes of publication, not only for crimes, but for faults, foibles, deformities of mind or person, even admitting all such allegations to be true.   When the accusation is made by public bodies or officers, whose duty it is by law to detect and prosecute offenses, the charge and the investigation are submitted to, and no spirit of revenge is produced; but if private intermeddlers, assuming the character of reformers, should have the right to become public accusers, and when called to account to defend themselves by breaking into the circle of friends, families, children, and domestics to prove the existence of errors or faults which may have been overlooked or forgiven where they were most injurious, the man who is thus accused, without lawful process, might be expected to avenge himself by unlawful means, and duels or assassinations would be the common occurrences of the times.   Instances are recollected where violence, and even death, has ensued from such proceedings."

[9] The people of the territory of Dakota, enacted into statute the rule adopted by the courts of Massachusetts when they adopted what is now section 318, Pen. Code, supra, and by so doing said to every libelant that the truth of your libels shall be no defense unless you can also show that, in publishing same, your motive was good, and the end you sought justified the means used. The burden is upon the defendant, when he admits the publication, and defends upon the ground that the libel "is true, and was published with good motives and for justifiable ends," to prove such defense, and thus overcome the presumption of malice that would otherwise flow from proof of the publication of that which must necessarily tend to injure the good name of another.   Com. v. Bonner, 9 Metc. (Mass.) 410.

[10] Appellant admitted the publication. It must be conceded that the article published might well be construed as charging Smull with indulging in unlawful gratification of sexual passion, and therefore would tend to injure his good name. Appellant, while denying that he intended by the words used to accuse Smull of adultery, and while claiming that he acted without malice, testified, as his own witness upon direct examination: "When I wrote that article, I meant by the word 'lust' its general meaning. which is an unnatural craving; it might be for booze, or it might be for women, and various other things, and I used the word with that view." And upon cross-examination he said of his use of the word "lust": "I did not figure that it related to a sexual appetite, not especially that; it was an unnatural craving for anything; that was the way I took the word. I did not use the word especially with reference to sexual desire." It is thus clear that appellant had in mind when he published the libel that the word "lust" meant, among other things, as defined in Webster's New International Dictionary: "Sensuous desire; bodily appetite; specif., and most commonly sexual desire, as a violent or degrading passion." To prove the truth of the libel, appellant put in evidence testimony which, if believed by the jury, could but convince them that Smull was a moral pervert—one who had been guilty of conduct the most indecent imaginable—one who, if not guilty of adultery upon at least one occasion referred to in the testimony, must have refrained therefrom, not from any sense of shame or duty, but rather because constrained through fear of the physical ills that might result therefrom, or else because prevented through temporary or permanent impotency. What excuse did appellant give for publishing a libel that could only be defended against by dragging into the light of day such a shocking condition? What was there to excuse him for heaping shame and disgrace upon those near and dear to Smull, and who, perchance knowing of his weaknesses, if weaknesses he had, may have thought it best to overlook same? What public benefit could result from such exposures? What possible good motive could there be? What justifiable end? According to appellant's own testimony, the only motive he had for publishing this libel and the end sought thereby was that he might financially benefit the paper which he was publishing. He claimed that Smull had spread abroad the report that

the paper was in financial straits; that its circulation was small; that it could not run much longer. He also claimed that Smull had endeavored to directly take from his paper certain advertisers, and to procure same for a paper with which Smull was then connected. All of this might justify a publication by appellant of an article placing the responsibility for the financial condition of his paper upon Smull; but the end sought did not justify him in dragging before the public Smull's frailties and weaknesses, though these frailties and weaknesses were what had led Smull into wasting the assets of the paper. Nothing but a motive to benefit either Smull or the public would furnish any justification therefor; no such motive is claimed, and certainly no such end could possibly result therefrom. Smull occupied no such relation to the public at large as could suggest any benefit to the public from such publications. Appellant professed having no feeling of malice toward Smull, but rather one of pity. His conduct belied his words.

[11] Presumptions both of malice and intent to injure flow from what appellant concedes he did—he wholly failed to refute these presumptions—therefore his own admissions convict him of the offense charged. Such being the record, certainly this court should not reverse a judgment so clearly just simply because there may have been some errors committed by the trial court, none of which, however, in any way relates to or could affect these affirmative defenses which appellant was called upon to, but wholly failed to, establish. Section 500, Code Crim. Proc.

The judgment appealed from is affirmed.

McCOY, J., took no part in this decision.