PEOPLE *v.* TALBOT.

1. COUNTIES—PUBLIC RECORDS—RECORD OF PROCEEDINGS.
   A printed pamphlet entitled "The Official Proceedings of the Board of Supervisors" *held*, not of itself a record of the proceedings of such board.

2. LIBEL AND SLANDER—MALICE—PUBLICATION—PRESUMPTIONS.
   Printed matter charging a public official with being dishonest is libelous *per se*, and legal malice is presumable from its publication, in a paper.

3. SAME—JUSTIFICATION—TRUTH OF CHARGE.
   Under the Constitution, Art. 2, § 18, providing that in all prosecutions for libel the truth may be given in evidence to the jury if it shall appear to the jury that the matter charged as libelous was true and was published with good motives and justifiable ends, the accused shall be acquitted, a defendant may only show his good faith and that he published the libel concerning which the complaint is made for justifiable ends after he has shown its truth.

4. SAME—CRIMINAL LAW—DIRECTED VERDICT.
   In a criminal prosecution for publication of printed mat-

ter which was libelous *per se*, the fact that the court at first erroneously submitted to the jury the question of malice and later instructed them it was their duty to convict, is immaterial, as, under any view of the case, defendant was properly convicted.

Exceptions before judgment from Kalamazoo; Weimer, J. Submitted April 12, 1917. (Docket No. 160.) Decided May 31, 1917.

Truxton Talbot was convicted of libel. Affirmed.

*J. M. Alexander* and *R. G. Goembel*, for appellant.

*Frank F. Ford*, Prosecuting Attorney, for the people.

On appeal from the municipal justice's court of the city of Kalamazoo to the circuit court for the county of Kalamazoo, defendant was convicted of criminal libel. The case is here upon exceptions before sentence. The defendant was the owner and publisher of a newspaper called "The People," in which on the 16th day of September, 1915, the following article was published:

"Clerk Curtenius, you are dishonest. * * *

"The official and political life of the county is corrupt and must be purified. * * *

"We must start with the county officials and as the county clerk and clerk of the board of supervisors is the official figurehead, we will do well to bring our guns to bear upon him, not that he is more guilty than others, but his position makes it impossible for the official rottenness that exists to escape his knowledge.

"I have said that this county clerk, Edward F. Curtenius, was either crooked or incompetent, and I do not believe he was incompetent.

"I now say that Edward F. Curtenius, county clerk and clerk of the board of supervisors, is dishonest."

The ownership of the paper and the publication of the article in question was admitted by the respond-

ent. Respondent, who took the stand in his own behalf, testified that his purpose in publishing the article in question was—

"to arouse the people to the possibility of allowing their county to be run as it was apparently run, in view of these reports that were sent out as proceedings of the board of supervisors, from which the people could get no knowledge of the affairs of their county."

He further testified that:

"I believed Mr. Curtenius to be dishonest, and still believe him to be dishonest."

The charges made by respondent against the complaining witness seem to have been based upon alleged discrepancies found by the respondent in the annual report of the proceedings of the board of supervisors of Kalamazoo county. A copy of this report seems to have been furnished by the complaining witness to the printer upon the direction of the printing committee of the board of supervisors. After the matter was set up by the printer, proofs were returned to the county clerk's office, but apparently were not corrected by him or any one in his behalf. The result was that the printed reports contained many errors in extension and addition, and the charges made by respondent against the complaining witness were based upon such errors. Respondent at no time made any effort to determine whether the printed reports corresponded with the proceedings on file in the office of the county clerk, but based his charges of dishonesty solely upon what appeared in the printed report. With reference to the connection of the complaining witness, the county clerk, with the printing of said reports, the following appears:

"Q. Then, Mr. Curtenius, do you wish to say you had nothing to do with the printing of these reports?
"A. No, sir; I had nothing to do with the printing.

"*Q.* And you have nothing to do with getting them printed?

"*A.* No, sir. The committee on printing lets them to the lowest bidder. I have nothing to do with their letting it. They let it to any one they see fit, and I turn the copy over to them, and then the printer returns the books to my office as county clerk. I have that to do with it and nothing more.

"*Q.* Did you ever look over and correct the proof.

"*A.* No, sir. It was not my duty to correct the proof, and I was never directed to do so, and I don't know of any law which requires me to correct the proof of these pamphlets, and the printing committee never asked me to do so. When the bill for the printing is presented it is passed on by the auditing committee, and allowed or disallowed by them, and I have nothing to do with that."

This testimony stands uncontradicted upon the record. The respondent offered no testimony tending to show the truth of the libel. As indicated, however, he gave testimony tending to show his honest belief in the truth of the statements published and that he published the libel, "with good motives and for justifiable ends."

At the conclusion of the testimony the trial court submitted the case to the jury. The entire charge is not in the record, but from that portion of the charge printed in the record, it is apparent that the only question left to the jury was whether or not respondent had published the libel with malice. After the jury had been out for some time, they returned to court and announced that, "We have agreed to disagree," whereupon the court instructed them that that was not a verdict, that it was their duty to render a verdict if possible, and sent them back for further consideration. At the end of a half hour, no verdict having been received from the jury, they were recalled by the court, when the court instructed them further, and finally said:

"I have no hesitation, in view of the fact that you have been unable to agree upon the facts, but inasmuch as you have not been able to, it seems to me under the evidence in this case, the undisputed evidence, and under the respondent's own testimony, it is my duty to say to you under this testimony that it is your duty to find the respondent guilty as charged."

The jury thereupon retired, and a verdict of "guilty" was later returned.

BROOKE, J. (*after stating the facts*). But two questions are argued in the brief of appellant, and those only will be discussed. The first question argued is the assignment of error based upon an exception to a ruling of the court that the pamphlets entitled and called "The Official Proceedings of the Board of Supervisors" are not original proceedings of the board of supervisors. We think it apparent that the ruling of the court was entirely correct. The question arose during the examination of Mr. Curtenius, the complaining witness, and he was asked whether the pamphlet was a record of the proceedings of the board of supervisors of the county. His answer was:

"I don't know whether it is or not.
"Q. Where are those records?
"A. They are in my office."

The printed pamphlet clearly was not of itself a record of the proceedings of the board.

The only other question argued by counsel for respondent is raised under assignments of error 11, 12, and 13, which refer to that portion of the charge of the court in which he instructed the jury that it was their duty to return a verdict of guilty. With reference to this question it is the contention of counsel for appellant that the question of malice was one for the jury to pass upon, and that the court was without power to give the instruction quoted above. We have

frequently held in criminal cases where there is no disputed question of fact, and particularly where no intent was involved, that it was proper for the court to instruct the jury that it was their duty to render a verdict of "guilty." *People* v. *Neumann,* 85 Mich. 98 (48 N. W. 290) ; *People* v. *Elmer,* 109 Mich. 493 (67 N. W. 550). Under such circumstances the court may not coerce a verdict of guilty from the. jury. *People* v. *Warren,* 122 Mich. 504 (81 N. W. 360, 80 Am. St. Rep. 582) ; *People* v. *North,* 153 Mich. 612 (117 N. W. 63). The only question before us, therefore, upon this record, is whether the court was right in directing the jury that it was their duty to return a verdict of guilty." The Constitution (section 18, art. 2) provides:

"In all prosecutions for libels the truth may be given in evidence to the jury; and, if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the accused shall be acquitted."

It is urged by counsel for the people that the printed matter complained of was libelous *per se.* With this view we are in accord. It plainly charged a public official with dishonesty in office. The article published being libelous *per se,* it follows that legal malice must be presumed upon its publication.

Under the constitutional provision above quoted, the respondent may only show his good faith, and that he published the libel of which complaint is made for justifiable ends, after he has shown its truth. In the case at bar there is absolutely no testimony in the record tending to prove the truth of the publication. It, therefore, was entirely immaterial whether the defendant believed what he published to be true or not, or whether he published the article for justifiable ends or not. In Massachusetts there is a statute which contains the same provisions as section 18, art. 2, of our

Constitution. The rights of respondent under that statute were considered in *Commonwealth* v. *Snelling*, 15 Pick. (32 Mass.) 337. The court there, speaking through Chief Justice Shaw, said:

"It may be conceded at once that malice is of the essence of libel, and that any definition or any charge of libel which should not embrace this essential characteristic would be defective. But, admitting this position in its fullest extent, we think it does not conduct the defendant to the conclusion at which he aims. His learned counsel contends that his object was to attack vicious persons and pernicious establishments, injurious to the morals of the community, and to the best interests of society, that his purpose therefore was philanthropic and benevolent, and that he should have been allowed to submit these considerations to the jury to rebut the presumption of malice. We think the fallacy of this argument consists in overlooking the plain and obvious distinction between the legal and the popular meaning of the term 'malice.' In a legal sense, any act done wilfully and purposely to the prejudice and injury of another, which is unlawful, is, as against that person, malicious. It is not necessary to render an act malicious, that the party be actuated by a feeling of hatred or ill will towards the individual, or that he entertain and pursue any general bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of manners; but if in pursuing that design he wilfully inflicts a wrong on others, which is not warranted by law, such act is malicious. * * * The next general ground of the defendant's exception arises upon the construction of the statute, allowing the truth to be given in evidence, on a criminal prosecution for libel. The exception shortly stated is that the judge instructed the jury in point of law that upon the true meaning and construction of this statute, proof of the defendant's having heard and been informed of the facts alleged in the publication, upon what he considered credible and good authority, and also that he believed the facts to be true, was not admissible evidence to rebut the presumption of mal-

ice, and that, in order to justify himself under the statute, he must prove the charges to be true, and that he published them with good motives and for justifiable ends. It appears to the court, upon the fullest consideration, that this can hardly be said to be so much the construction of the statute as the plain and literal repetition of its text. * * * But how is this defense to be made? By proof of the truth of the matter, charged as libelous; not his belief of the truth, not his information, nor the strength of the authority upon which such belief was taken up. No question can arise as to the good motive or justifiable end, until the truth is proved. The proviso referring to the motive and purpose is a restriction on the right of the defendant. That is, he shall not be justifiable in publishing even the truth, concerning another, which tends to bring him into hatred, contempt, or ridicule, unless he can show, in addition to proof of the fact, proof that this was published with good motives and for justifiable ends. * * * We think, for obvious reasons, the statute intended to put upon the party making the charge, which is to consign another to infamy by a public stigma, the responsibility of making strict proof of the facts imputed, and to give him the benefit of it if he can show a good motive and purpose in publishing it."

With this construction of the Massachusetts statute, which is equally applicable to our constitutional provision, we agree. In *Whittemore* v. *Weiss*, 33 Mich. 353, this court, speaking through Chief Justice COOLEY, said:

"The judge charged the jury that:

"'Malice is to be presumed from the publication, and its falsity; that to rebut this presumption, defendants must prove that they made the publication in good faith, believing it to be true in all its essential parts, and for a proper purpose.'

"Defendants insist that the purpose is immaterial, if they believed what they published, and made the publication in good faith. This might be so if the publication had been true; but good faith cannot protect a false publication, nor can one excuse himself

for making a mistaken assault upon his neighbor's reputation by showing the absence of malice, when, even had his charge been true, there was no proper purpose in bringing the matter to public notice. If one makes an attack which the occasion does not justify, there is no injustice to him in requiring him to show its truth."

At the conclusion of the testimony it would have been proper for the court to have instructed the jury (responsibility for the publication being admitted by respondent) that the matter complained of was libelous *per se;* that its truth had not been shown by respondent, and that therefore the question of respondent's belief in its truth, or his good faith in publishing it was immaterial, and that it was their duty to render a verdict of "guilty." That the court at first erroneously submitted the question of malice to the jury, but later instructed the jury that it was their duty to convict, is, it appears to us, a matter of no consequence to respondent. Under any view that may be taken of the case respondent stands properly convicted of the offense of which he was charged.

The conviction is affirmed, and the trial court is advised to proceed to judgment.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. FELLOWS, J., did not sit.