### SACHS v. GOVERNMENT OF THE CANAL ZONE.

No. 12481.

United States Court of Appeals Fifth Circuit.

July 19, 1949.

Writ of Certiorari Denied Oct. 24, 1949.

See 70 S.Ct. 100.

Harold I. Cammer, New York City, L. S. Carrington, Ancon, Canal Zone, for appellant.

Alexander M. Campbell, Asst. Atty. Gen., Tom DeWolfe, Sp. Asst. to Atty. Gen., Daniel McGrath, U. S. Atty., Ancon, Canal Zone, Rowland K. Hazard, Asst. U. S. Atty., Ancon, Canal Zone, for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Defendant was charged by information [1] with criminally libeling [2] Daniel E. McGrath, District Attorney for the District of the Canal Zone.[3]

[1] "Information for libel.—An information for libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the information is founded; but it is sufficient to state generally that the same was published concerning him, but the fact that it was so published must be established at the trial." Sec. 201, Title 6, Canal Zone Code of Criminal Procedure.

[2] "Libel defined.—A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or to publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule." Sec. 351, Title 5, Canal Zone Criminal Code.

"Punishment of Libel.—Every person who willfully and with a malicious intent to injure another publishes or procures to be published any libel is punishable by a fine of not more than $5,000, or imprisonment in the penitentiary for not more than one year". Sec. 352, Title 5, Canal Zone Criminal Code.

[3] This was the libel the information set out:

"If I were the District Attorney, I would be just a little more concerned with my own neck before I took a swipe at somebody else's. For your information our attorneys in Washington are already looking into the scandalous handling of the Nolan case. We have also received

Defendant's demurrer to the information, that it lacks directness and certainty in setting out the circumstances of the offense and that the facts as stated do not constitute an offense, his motion to suppress the use of illegally obtained evidence, and his challenge to the jury panel because of the exclusion of women from it, were all overruled, and the case proceeded to trial before a judge and jury.

At the conclusion of the Government's evidence,[4] defendant's motion for a directed verdict was denied. At the conclusion of defendant's evidence, consisting of the evidence of only one witness,[5] defendant not taking the stand, defendant renewed

reliable information that an important affidavit figuring in the case was obtained by your office through trickery and duress. It has been reported that an attempt was made to bribe the defendant with a suspended sentence if he would enter a guilty plea and promise not to take civil action against you. So I say once again you had better give 'a few more thoughts to your own precarious position before getting into more hot water."

[4] This was in substance, that on Dec. 29, 1947, an information was filed by D. E. McGrath, District Attorney for the District of the Canal Zone, charging one Nolan, a member of the United Public Workers of America, (C. I. O.) with forgery, and on Feb. 3, 1948, his case was set for trial by jury on Feb. 26, 1948.

On the morning of Feb. 4, 1948, in the union office at LaBoca, Canal Zone, Sachs handed to one Lucille Harewood the text of a speech in English which he directed her to translate into Spanish as a press release. Harewood was employed in the union office at that time as steno-typist and translator. On the same morning of Feb. 4, 1948, one Eleanor McIllhenny, a newspaper reporter employed by the "Nation" talked to Sachs in the Union's office in LaBoca, Canal Zone. They talked about the speech he would make that evening over the radio. Sachs declined to discuss his speech, but informed McIllhenny that she could obtain a copy of the speech the following day in that office.

On the evening of Feb. 4, 1948, between seven-thirty and eight o'clock, at Station HOG, located on "H" street in Panama City, about five hundred yards from the United States District Court House in the Canal Zone, Sachs delivered a radio speech, which was heard in the Canal Zone. Sachs read the speech from a manuscript. The speech included the libelous words which constitute the basis of the information filed against Sachs.

On Feb. 4, 1948, about nine o'clock in the evening, in Panama City, Sachs delivered to one Dwight McKabney, a part-time radio announcer at Station HOG in Panama City, original text of the speech, from which he had earlier spoken over the radio. McKabney made an original and four carbon copies of this manuscript which were signed by him. One of the copies was delivered to the editorial office of the "Panama American" in Panama City the same evening by him. Another copy was obtained by one Philip Payne, an employee of the "Nation" which is a bi-lingual newspaper published in Panama City.

On 4 and 5 February 1948, the office of the United Public Workers, Local 713, was located in LaBoca, Canal Zone, on the Pacific side of the Isthmus.

On February 5, 1948, at about nine o'clock in the morning, Sachs handed to one Undine Reid in the Union's office in LaBoca, Canal Zone, a writing in English which contained the libelous words concerning District Attorney McGrath, and directed her to translate that writing into Spanish and have it incorporated in the speech Harewood was working on at the time. Reid on Feb. 5, 1948, was the office manager. The writing was translated by Reid and inserted in the speech by Harewood. The insert contained the libelous words. Sachs told Reid to send the completed version to all the newspapers, and she did this.

On Feb. 5, 1948, in the Union's office at LaBoca, Canal Zone, at about nine-thirty in the morning, Reid saw Sachs hand reporter McIllhenny a copy of the complete speech. McIllhenny does not deny that she was at the Union office on the morning of Feb. 5, 1948, and there received a copy of the speech. Harewood states that McIllhenny was not there the morning of Feb. 5, 1948. She also says that she did not see McIllhenny in the office the morning of Feb. 4, 1948, although McIllhenny declared she was there that morning.

On Feb. 5, 1948, the "Panama American" and the "Nation" circulated in the Canal Zone and published the libelous words.

[5] The evidence of this witness, Dwight A. McKabney, was in substance that he had obtained from the defendant the manuscript of his radio speech and had made an original and four carbon copies

his motion for a directed verdict. It was again denied, and the cause submitted to the jury, there was a verdict of guilty, followed by a pre-sentence investigation under Secs. 494–495, Title 6, Canal Zone Code,[6] at which the Government offered evidence in aggravation, and defendant offered none in mitigation, of the offense, and a sentence to the penitentiary at hard labor for nine months.

Defendant appealing is here complaining both of the conviction and of the sentence, assigning many errors in procedure, and asking that if the conviction be affirmed, the sentence be modified.

Before taking up appellee's claims of error, some general observations are in order. In the first place it is well to note that it is not, it cannot in reason be, contended that the charges the defendant made against the District Attorney were not highly libelous per se. It is not, it cannot in reason be, contended that they were not deliberately and intentionally made by defendant in his capacity as representative of the United Public Workers (C. I. O.)

for the purpose and with the intent of seriously reflecting on and of, thereby, undermining the District Attorney personally and in the conduct of his office in connection with criminal action then being taken against an officer or functionary of the C. I. O.

■ In the second place, it is quite plain that unless both true and justified, as to both of which the burden was on the defendant,[7] the publication of the libel was a serious offense against the Government of the Canal Zone calling for vigorous prosecution and, if proven, condign punishment.

The record contains not a single word of testimony introduced or offered showing or tending to show that the charges made were true or were in any manner legally justified, and in addition the record contains a statement made by Mr. Cammer,[8] one of the defendant's counsel, that the defense is a general denial under the plea of not guilty, and the principal reliance of the defendant is that the criminal act, if any, was not committed in the Zone.

---

of it, delivering one copy to the editorial office of the Panama American, a newspaper, and leaving the other four copies on file in the radio office, and that on Feb. 5th, in the Canal Zone, he read in it and in the Nation, also a newspaper, the charges against the District Attorney made the basis of the libel prosecution.

6 "494. After a plea or verdict of guilty where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct.

"495. The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken out of court upon such notice to the adverse party as the court may direct. No affidavit, testimony or representation of any kind verbal or written can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provid-

ed in this and the next preceding section."

7 "Truth and good motives as a defense. —In all criminal prosecutions for libel the truth may be given in evidence to the jury, and if it appears to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends the defendant shall be acquitted." Sec. 354, Title 5, Criminal Code Canal Zone.

8 At the conclusion of the charge, Mr. Cammer made this statement:

"Your Honor, if I may make a general exception to your charge, it would be that in a large part Your Honor appears to have based his charge upon the Rounsevell case in 1935, I believe. In that case the defense, as I have read the papers, was truth. The defense was truth. In this case the defense is a general denial under plea of not guilty and the principal issue before this jury is the question of the place where the alleged offence was committed; to-wit, the defendant relying largely on the fact that the criminal act, if any, was not committed in the Zone. I think that Your Honor's charge, generally speaking, does not address itself to that as the main issue." P. 153 of the Record.

In this state of the record, the admonitions of the Congress of the United States,[9] that no indictment shall be deemed insufficient for defects and that no new trial is to be granted for merely abstract errors which do not affect the substantial rights of the defendant, have peculiar force. With, therefore, the undisputed facts shown of record, and these statutes held firmly in mind, we take up appellant's assignments of error to determine not whether the trial was completely free of error but whether any of the claimed errors prejudicially "affect" appellant's substantial rights.

Taking them in the order of the five general heads under which appellant presents them in his brief, we are in no doubt that the three presented under the heading, "1. Rulings Before the Trial", are wholly without merit.

■ As to the first, overruling the demurrer to the information, it is quite clear that under modern rules of criminal pleading,[10] without the aid of the remedial statute, 18 U.S.C.A. § 556, or the provision of the Canal Zone Code governing Information for libel, the information is not subject to the demurrer. That the information did not violate appellant's substantial rights is put beyond the shadow of a doubt when Sec. 201, Title 6, note 1, supra, is looked to.

■ The second error assigned under this head, the denial of the motion to suppress statements of witnesses obtained by illegal issuance of subpoenas, is patently without merit. The right claimed, the protection invoked by defendant is personal to and may be asserted or waived by the person searched or examined. It was never heard that a defendant could object to the violation of the privileges of others not claimed by them because that violation discovers evidence by which he is convicted.[11] The cases cited by appellant all dealt with situations where the rights of defendant were invaded. Assuming, without deciding, that the district attorney's action was an invasion of rights of Miss Harewood, which she could have claimed, it was not, it could not have been, an invasion of defendant's rights.

■ The third error under this ground, the overruling of the challenge to the panel on the ground that there were no women jurors on it, is especially without substance. Authorized by Title 7, Canal Zone Code,[12] to "provide for the selection * * of jurors," the District Judge of the Canal Zone has, by Part 5, Sec. 1 of the Rules of the United States District Court for the Canal Zone, for many years made it a prescribed qualification for persons serving as jurors in that court that they be of the male sex. The Canal Zone Code and the rules aside, however, it is quite clear that failure to draw women on the jury is not a matter of which appellant can complain[13] as prejudicially affecting his substantial rights.

---

[9] 18 U.S.C.A. § 556 provides:
"No indictment * * * shall be deemed insufficient * * * by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." [See Federal Rules of Criminal Procedure, Rule 52, 18 U.S.C.A.].
28 U.S.C.A. § 391 provides:
"On the hearing of any appeal * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." [See Federal Rules of Criminal Procedure, Rule 52, 18 U.S.C.A.; Federal Rules of Civil Procedure, Rule 61, 28 U. S.C.A.].

[10] Whitehead v. United States, 5 Cir., 245 F. 385; Evans v. United States, 153 U.S. 584, at 590, 14 S.Ct. 934, 38 L.Ed. 830; McKelvey v. United States, 260 U. S. 353, 43 S.Ct. 132, 67 L.Ed. 301.

[11] Remus v. United States, 6 Cir., 291 F. 501; Wilson v. U. S., 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Haywood v. U. S., 7 Cir., 268 F. 795.

[12] Sec. 34 provides as follows:
"The district judge shall provide for the selection, summoning and serving of jurors from among the citizens of the United States subject to jury duty to serve in the division of the district in which such jurors reside. * * *"

[13] Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Gibson v. Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075; Commonwealth v. Welosky, 276 Mass. 398, 177 N.E. 656; Inter-

Under his second heading, "Rulings During The Trial", appellant, on pp. 11 and 12 of his brief, makes many subdivisions, but in his summary of the argument, he classifies these by subject matter and somewhat reduces them in number, while in the argument and statement of points, he reduces the many to three mainly relied on.

These, in order of importance as determined by their position, and the space allotted them, in the brief, are:

First, that there was no publication, only circulation, in the Canal Zone, the publication having been outside, and the circulation not being an offense under the statute forbidding publication;

Second, that defendant was denied the right to prove the circumstances surrounding the publication;

Third, that his proffers of proof of substantial truth were improperly rejected.

Stated succinctly, his first point under the second head is that the publication was made on Feb. 4, in Panama City and outside the Canal Zone, and that the circulation in the Canal Zone of the newspapers in which the libel was published was not a publication within the Canal Zone.

■ It is hornbook law that at common law a criminal prosecution for libel might be, and, in the absence of statutory provisions to the contrary, it is generally held in the United States, that a criminal prosecution for libel may be instituted in any jurisdiction where the libelous article was published or circulated, irrespective of where such article was written or printed.[14] In some states, especially as regards newspapers, printed in a particular place and circulated all over the state or country, there are statutes fixing venue of such suits at the place where printed, and in some states, as in Forman v. Mississippi Pub. Corp., 195 Miss. 90, 14 So.2d 344, 148 A.L.R. p. 469, note at 477, and Age-Herald Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A.L.R. 898, different rules for

newspapers than for ordinary or simple publications of libel are laid down. Among the many cases which may be cited holding to the general rule are People v. Seely, 139 Cal. 118, 72 P. 834; People v. Miller, 122 Cal. 84, 54 P. 523; Gardner v. State, 15 Ariz. 403, 139 P. 474; Leavy v. State, 45 Ga.App. 574, 165 S.E. 470; Haskell v. Bailey, 4 Cir., 63 F. 873; State v. Huston, 19 S.D. 644, 104 N.W. 451, 117 Am.St.Rep. 970, 9 Ann.Cas. 381.

No provision of the Canal Zone Code in anywise changes, or provides differently from the common law. In addition, the code provides, Sec. 357, Title 5, that the author of the libel in all cases is equally guilty and is subject to the same punishment as the publisher, owner, or proprietor of the newspaper or other printed publication in which the libelous article appears.

■ Appellant's contention that he could, standing or being outside of the Canal Zone, write all of the libelous articles he wanted to, deliver them to a newspaper in, or its representative outside of, the Canal Zone for publication there, and escape punishment, is wholly without merit.

■ Upon the second claim of appellant, under this head, that the court erred in rejecting his proffers of evidence to show, in self defense, the circumstances surrounding his making the libelous charges, it is sufficient to say without more that the court ruled correctly that none of these matters were admissible in justification because the truth of the charges had not been first established, and in addtion they were not relevant upon the issue of libel vel non. If appellant had tendered them, after conviction, on the issue of mitigation of sentence, to show that he had acted under provocation, they would certainly have been admissible. They were not, however, at all relevant on the issue of libel vel non. The appellant did not offer any of these matters on mitigation. They were wholly irrelevant to the issue upon which they were offered.

national Longshoremen's & Warehousemen's Union v. Ackerman, D.C., 82 F. Supp. 65; Johnson v. Sanford, 4 Cir., 167 F.2d 738.

[14] 33 Am.Jur., Libel & Slander, Sec. 322; Odger's Slander & Libel, 5th Ed. pp. 467–469; 37 A.L.R. 914; State v. Piver, 74 Wash. 96, 132 P. 858, 49 L. R.A.,N.S., 941, Ann.Cas.1915A, 695; 148 A.L.R. at 477.

■ The third contention of appellant under this head, that his proffers of substantial truth were improperly rejected, is not supported by the proffers. Without further lengthening this opinion by setting them out, it is sufficient to say that we have given careful consideration to each of the proffers and found that none of them in any manner proved or tended to prove the substantial truth of the matter charged against the District Attorney, none of them proved, or tended to prove, justification for the charges. The court correctly defined the issues to be tried and as correctly kept the evidence within the bounds he had laid down. There was no error in refusing to permit proof of the matters proffered by appellant.

■ When we come to appellant's third general heading, "The Charge To The Jury", we find nothing whatever, except the generalization on page 12 in his brief, upon the subject. We have, however, examined the charge as a whole, including the instructions specifically complained of, and find the charge as a whole fair and full and containing no prejudicial error. We have also examined the requested instructions, failure to give which is complained of, and find no error in refusing to give them.

■ As to the forth general heading, "The Verdict", that there was a complete failure of proof by the Government, and it was error to deny appellant's motion for a directed verdict, and his motion to set aside the verdict, we are in no doubt that the point is completely lacking in merit.

It is not denied, indeed it is admitted that the defendant wrote and uttered the words complained of, and there was ample evidence of deliberate and intentional publication and circulation thereof in the Canal Zone, or a parting with the custody of th

libel by appellant under circumstances which exposed it to be published there.

Sec. 355, Title 5 of the Canal Zone Criminal Code provides:

"To sustain a charge of publishing a libel, it is not needful that the words or things complained of should have been read or seen by another. It is enough that the accused knowingly parted with the immediate custody of the libel under circumstances which exposed it to be read or seen by any other person than himself."

■ It is not, however, upon the basis that publication was not proved that appellant makes his point of failure of proof. He makes it on the basis that in order to convict him of libel, the burden was upon the government to prove the falsity of the charges. The very authorities he cites in his brief show otherwise.

■ As everyone knows, truth was no defense to a libel at common law, nor was, or is, it a defense under Statute law, except where expressly made so by a positive statute.

53 C. J. S., Libel and Slander, § 299, at p. 426 declares:

"Since at common law the truth cannot be shown in defense, as discussed [in] § 287, an allegation of falsity in the indictment is regarded as raising an immaterial issue. Where falsity is an element of the statutory offense, the state must prove allegations of falsity in the indictment."

■ This is so in but few of the states. It is not so in the Canal Zone. In most of the states, as in the Canal Zone, truth and good motives may be shown as a defense.[15] But under such statutes as this, the burden is on the defendant to prove the truth, and unless he proves the truth, no justification can be shown.[16]

---

[15] "Truth and good motives as a defense.—In all criminal prosecutions for libel the truth may be given in evidence to the jury, and if it appears to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends the defendant shall be acquitted." Sec. 354, Title 5, Criminal Code; 33 Am.Jur., Libel & Slander, Sec. 327 at p. 303, declares: "Under a statute providing that in all prosecutions for libel, the truth may be given in evidence, it has been held that the state need neither allege nor prove the falsity of the libel." State v. Fosburgh, 32 S.D. 370, 143 N.W. 279, Ann. Cas.1916A, 424; People v. Taylor, 279 Ill. 481, 117 N.E. 62; People v. Fuller, 238 Ill. 116, 87 N.E. 336.

[16] People v. Talbot, 196 Mich. 520, 162 N.W. 1017; State v. Herman, 219 Wis. 267, 262 N.W. 718.

53 C. J. S., Libel & Slander, § 300, at page 429 declares:

"Ordinarily the burden rests on accused to prove justification by evidence of truth or otherwise. Where truth is a defense if published with good motives and for justifiable ends [as is the case in the Canal Zone], the prosecution need not prove the falsity of the libel, and the burden is on accused to prove such defense; he must not only prove the truth of the charge, but also that it was published with good motives and for justifiable ends."

There was no effort to prove that the statement of the libel was true, none to prove that its publication was justifiable.

■■■ Finally, as to appellant's fifth general heading, "The Pre-Sentence Procedure And The Sentence", we find nothing in the procedure of which appellant can complain. If the Canal Zone Code for pre-sentence investigation applies, it was followed precisely. If it does not apply, the court had the right in its inherent power to do justice, to make such investigation as it pleased and in such way as it chose.[17]

As to the evidence of Brodsky's suspected communism and the other evidence offered and the argument of the prosecuting attorney, this was all before the district judge without a jury, the defendant had full and complete opportunity to rebut any inferences that might have been drawn, but in the end it was for the district judge to make his determination as to the sentence imposed.

As the evidence developed in the pre-sentence trial showed,[18] the district attor-

---

[17] Samuel Titto Williams v. People of New York. 69 S.Ct. 1079, Cf. Saleilles, The Individualization of Punishment.

[18] This was that:

Joseph Sachs is the International Representative of the United Public Workers (C. I. O.) a labor organization of native Panamanian and West Indian workers employed on the Canal Zone. This position he has filled since September, 1947. Max Brodsky was the Regional Director of the same organization until his departure from the Isthmus on March 19, 1949, and was a close associate, officially and socially, of Sachs. About one week prior to his departure for the United States, Brodsky was expelled from the Republic of Panama by Panamanian Foreign Minister Ignacio Molino on the grounds that he was a person known to have Communistic affiliations. He was permitted to remain in the Canal Zone until March 19th to afford him a reasonable time within which to dispose of matters requiring his personal attention.

The duties of Sachs and Brodsky were similar. They counseled the local union on matters of policy and conformed its activities to the International union's constitutional provisions. They were the leadership which conferred with the authorities of the Panama Canal in behalf of this organization. They were delegates to the United Public Workers Convention at Atlantic City in May, 1948, at which a resolution was passed that Sachs should not be prosecuted. They played undoubtedly a very influential part in the operations of the local union and its membership which runs into the thousands.

In October 1947 Mr. Sheridan was Acting District Attorney in Mr. McGrath's absence. At that time it was brought to his attention that funds of this union had been stolen or misappropriated. Consequently Mr. Sheridan requested the Canal Zone Police to investigate the report. Subsequently Col. Wang, the Executive Secretary of the Panama Canal, informed Mr. Sheridan that no investigation would be instituted. When Mr. McGrath returned, an affidavit of complaint was filed in November 1947, charging one Teodoro Nolan, the Treasurer of the union, with forgery. It was filed because the District Attorney's office had nobody to investigate what they morally knew to be a crime. When the complaint was filed the Canal Zone Police instituted an investigation of the case. On December 2, 1947, this affidavit of complaint was dismissed by Mr. Sheridan. A new affidavit was then filed against Nolan embracing practically the same charges as were contained in the first affidavit, but being more specific as to dates and amounts and the bank on which the draft in question was drawn. This complaint was signed by John L. Gordon, the man whose name purportedly had been signed to the check which was the substance of the charge against Nolan. On Dec. 9, 1947, Nolan was bound over to the United States District Court for the District of the Canal Zone for trial.

On Feb. 27, 1948, Nolan was convicted of forgery and subsequently sentenced to a year in the Canal Zone penitentiary at Gamboa, Canal Zone.

ney was intent on prosecuting Nolan for forgery and spoliation of the Union's funds. It was the District Attorney's contention, and the evidence supported it that Sachs was determined to obstruct this prosecution and that he not only made the speech because of resentment against the District Attorney but continued in his efforts to discredit him and destroy his influence. He at no time took the stand or put any witnesses on to explain or excuse his conduct as in the heat of passion or excitement, or to apologize for it or show a repentant mind. He stood in the trial of the case, he stands now, as the accuser. In his brief, filed here, through his counsel he attacks the District Attorney for doing his duty as though the District Attorney were himself the criminal. In fact, he says that it is the District Attorney who ought to be prosecuted and not the defendant. Stating that the complaint made a reprehensible, unjustifiable and improper attack upon the appellant, he rhetorically asks, "Is the District Attorney immune to criminal libel?" The answer, of course is, "Certainly he is not, and if he has libeled the appellant, he ought to be prosecuted for it".

In his attack upon the sentence, as distinguished from the conviction, the brief carries forward the same bitterness of attack, the same venom and anger, against the District Attorney. It does not put forward, as mitigating the offense, that appellant was acting in the heat of anger. He made no effort below, he makes none here, to apologize for his libelous charges or to explain them away on this ground. He made the attack in bitterness and resentment. He has continued it the same way. Complaining here of the sentence as unduly severe and asking its correction, he does not do so as an erring person convinced of his error and bringing forth fruits meet for repentance, but in anger and resentment. His brief states that he is a college graduate, a naval veteran, and that he has no previous record of crime. These facts show that he is not an underprivileged, illiterate and misled person, offending through ignorance, but a thoroughly informed one, who has knowingly offended and repents not. They make against him rather than for him when, with a vigorous determination to fight the matter out to the end in self-righteousness and as an accuser, he demands a reduction of his sentence instead of confessing his guilt and suing in repentance for a mitigation of its punishment.

Under Sec. 61, Title 7, the Judiciary Article of the Canal Zone Code [now 28 U.S. C.A. §§ 1291, 1292, 1294], Kemp v. Government of Canal Zone, 5 Cir., 167 F.2d 938, at 942, we have the power "to render such judgment as in the opinion of the said appellate court should have been rendered by the trial court."

The record leaves us in no doubt that the District Attorney was grossly libeled by appellant, that the libel was deliberate and intentional, and that appellant comes here now not at all repentant and seeking mitigation, but defiant and demanding that, by declaring unjustly imposed the sentence imposed by the District Judge, we justify appellant in what he did and the position he took below.

Looking at the sentence imposed in the light of the seriousness of the offense, the obduracy with which appellant has defended his conduct as defamer and attacked that of the public official he has defamed, while declining to put forward any matter in mitigation of the sentence, we are satisfied that we ought not to set aside as unjust and unwarranted, or in any manner modify, the sentence imposed below, and we decline to do so.

The judgment is affirmed.